# United States Court of Appeals
## For the First Circuit

No. 03-1979

FEDERACIÓN DE MAESTROS DE PUERTO RICO,

Plaintiff, Appellant,

v.

JUNTA DE RELACIONES DEL TRABAJO DE PUERTO RICO,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jay A. García-Gregory, U.S. District Judge]

Before

Selya, Lipez, and Howard, Circuit Judges.

Godwin Aldarondo-Girald, with whom Aldarondo-Girald Law Office
was on brief, for appellant.
Carlos E. López López, with whom Llovet, Zurinaga, & López,
P.S.C. was on brief, for appellee.

May 27, 2005

**LIPEZ, Circuit Judge**.  This case requires us to decide whether the Rooker-Feldman doctrine applies to an interlocutory jurisdictional decision of the Puerto Rico appellate courts.  While this case was under advisement, the Supreme Court unanimously decided Exxon Mobil Corp. v. Saudi Basic Industries Corp., 125 S. Ct. 1517 (2005), which substantially altered our understanding of the Rooker-Feldman doctrine.  We must now apply that altered understanding for the first time.

The present case is not itself complex.  Appellant Federación de Maestros de Puerto Rico ("Federación") is the target of an unfair labor practices grievance before appellee Junta de Relaciones del Trabajo de Puerto Rico, the Puerto Rico Labor Relations Board ("Board").  The Board denied the Federación's motion to dismiss the grievance on the ground of federal labor law preemption.  The Federación appealed that denial on an interlocutory basis to the Puerto Rico Court of Appeals and then to the Puerto Rico Supreme Court.  After losing the preemption argument in the Puerto Rico courts, the Federación filed an action for declaratory and injunctive relief against the Board in the United States District Court for the District of Puerto Rico.  The district court concluded that it lacked jurisdiction over the Federación's claim because resolving that claim would require the court to review the decision of the Puerto Rico courts that the Board had jurisdiction over the labor dispute, in contravention of

-2-

the Rooker-Feldman doctrine.  Consequently, the district court dismissed the complaint.  We affirm, and explain how Exxon Mobil affects some of our prior Rooker-Feldman cases.

## I.

The relevant facts and procedural history are undisputed. In 1990, the Federación Puertorriqueña de Trabajadores, a labor union, filed an unfair labor practices charge before the Board against the appellant Federación de Maestros de Puerto Rico.[1]  In 1995, the Board issued a grievance (administrative complaint) against the Federación.  The Federación then moved to dismiss the grievance on the grounds that the National Labor Relations Board ("NLRB") had exclusive jurisdiction over the dispute.[2]  It contended that Puerto Rico labor law was preempted by the National Labor Relations Act, 29 U.S.C. §§ 151-169, because the Federación's activities affected interstate commerce.[3]

---

[1]The Federación Puertorriqueña de Trabajadores, though a critical participant in the proceedings before the Board, is not a party to the federal action and will not be referred to again. Consequently, our references to "the Federación" in the remainder of the opinion refer exclusively to appellant, the Federación de Maestros de Puerto Rico.

[2]The Federación also asserted defenses under Puerto Rico law, which are not before us.

[3]The Act grants the NLRB jurisdiction over charges of unfair labor practices "affecting commerce," which means interstate commerce.  See 29 U.S.C. §§ 152(6)-(7), 160.  That jurisdiction is exclusive and preempts state labor law.  See San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 244-45 (1959).  Therefore, if the Federación's activities affected interstate commerce, the Board lacked jurisdiction over the grievance.

-3-

In early 1996, an administrative judge issued an "Interlocutory Report" concluding that Puerto Rico labor law was preempted by federal law, and that the Board therefore lacked jurisdiction. However, the Board rejected the Interlocutory Report and denied the Federación's motion to dismiss.

After unsuccessfully requesting that the Board reconsider its decision, the Federación filed an interlocutory appeal to the Puerto Rico Supreme Court. That court referred the appeal to the Puerto Rico Court of Appeals. In 1997, the Court of Appeals, in a lengthy opinion and resolution, concluded that the Federación's activities did not affect interstate commerce, affirmed the Board's jurisdictional decision, and remanded for further proceedings.

The Federación moved for reconsideration, which was denied after some delay. It then petitioned the Puerto Rico Supreme Court for a writ of certiorari, which, too, was denied. The Federación twice requested reconsideration of the denial of certiorari, and both requests were denied.

In November 1999, the Board issued a resolution ordering the continuation of the proceedings. In these proceedings, the Federación continued to argue that the Board lacked jurisdiction.

In March 2003, the Federación filed a complaint against the Board in federal district court, requesting declaratory relief and an injunction ordering the Board to terminate its proceedings for lack of jurisdiction. The Board moved to dismiss the federal

complaint under Fed. R. Civ. P. 12(b)(1) on the basis that the district court lacked subject matter jurisdiction to review a decision of the Puerto Rico Court of Appeals. The district court granted the motion, and the Federación timely appealed.

## II.

Where no evidentiary hearing has been held, we review de novo the district court's dismissal for lack of subject matter jurisdiction. Wang v. N.H. Bd. of Registration in Med., 55 F.3d 698, 700 n.3 (1st Cir. 1995). "[W]e construe the Complaint liberally and treat all well-pleaded facts as true, according the plaintiff the benefit of all reasonable inferences." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

Under the Rooker-Feldman doctrine, federal district courts lack jurisdiction over "federal complaints . . . [that] essentially invite[] federal courts of first instance to review and reverse unfavorable state-court judgments." Exxon Mobil, 125 S. Ct. at 1521; D.C. Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fid. Trust Co., 263 U.S. 413 (1923). At first glance, this case appears to present a relatively straightforward Rooker-Feldman issue. The Puerto Rico Court of Appeals held that the Board has jurisdiction over the underlying labor dispute, and the Puerto Rico Supreme Court declined to disturb that judgment. The Federación's federal complaint, however, asks the court to declare that the Board did not have jurisdiction over the labor dispute.

-5-

Thus, the Federación's complaint asked the district court "to review and reverse [an] unfavorable state-court judgment[]," Exxon Mobil, 125 S. Ct. at 1521.

However, the Federación argues that the Puerto Rico court's decision was interlocutory, and that Rooker-Feldman therefore does not apply. This argument draws some support from certain of our pre-Exxon Mobil precedents. In order to understand this argument, and why we now ultimately reject it, we must first describe the roots of the Rooker-Feldman doctrine, the somewhat uncertain path that our jurisprudence has taken, and finally the clarification provided by Exxon Mobil.[4]

A.      **Rooker and Feldman**

The jurisdictional statute providing for Supreme Court review of state court judgments states that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari" when certain federal questions are presented. 28 U.S.C. § 1257;[5] see also id. § 1258 (same for Puerto Rico Supreme

---

[4]Because the district court and the parties frame the dispute in terms of the Rooker-Feldman doctrine, we do not reach the questions of whether alternative doctrines such as abstention under Younger v. Harris, 401 U.S. 37 (1971), or refusal to grant declaratory relief under El Dia, Inc. v. Hernandez Colon, 963 F.2d 488 (1st Cir. 1992), would also have justified dismissal.

[5]When Rooker was decided, the Supreme Court's jurisdictional statute provided for writ of error as well as certiorari, but was in most relevant respects similar to the present 28 U.S.C. § 1257. See Act of September 6, 1916, Pub. L. No. 64-258, ch. 448, sec. 2,

-6-

Court).[6]  Rooker held that Congress, by the terms of that statute,
granted the United States Supreme Court, and only the United States
Supreme Court, jurisdiction over appeals from state courts:

> If the constitutional questions stated in the
> [federal complaint] actually arose in the
> [state case], it was the province and duty of
> the state courts to decide them; and their
> decision, whether right or wrong, was an
> exercise of jurisdiction. . . .  Under the
> legislation of Congress, no court of the
> United States other than this Court could
> entertain a proceeding to reverse or modify
> the judgment for errors of that character.  To
> do so would be an exercise of appellate
> jurisdiction.  The jurisdiction possessed by
> the District Courts is strictly original.

263 U.S. at 415-16 (internal citation omitted).  In other words,
Rooker is based on a negative inference: because Congress only
provided for review of state court judgments by the Supreme Court,
Congress therefore intended to preclude lower federal courts from
exercising such review.  Feldman repeated this reasoning: "[A]
United States District Court has no authority to review final
judgments of a state court in judicial proceedings.  Review of such
judgments may be had only in this Court."  460 U.S. at 482.

---

§ 237, 39 Stat. 726 (1916).

[6]In this opinion we will sometimes refer to § 1257 as a
shorthand for, collectively, both §§ 1257 and 1258.  The
differences between the two provisions are not relevant to the
issues raised in this case.

**B.       Our Pre-Exxon Mobil Cases**

1.       Relevance of Availability of Supreme Court Review

The close nexus between the <u>Rooker</u>-<u>Feldman</u> doctrine and Supreme Court review prompts an obvious question: what if the Supreme Court could <u>not</u> have reviewed the particular state court decision at issue?  Our pre-<u>Exxon Mobil</u> cases suggested that <u>Rooker</u>-<u>Feldman</u> would not apply in this context.  <u>See</u> <u>Cruz</u> v. <u>Melecio</u>, 204 F.3d 14, 21 n.5 (1st Cir. 2000) (stating, in dictum, that "denying jurisdiction based on a state court judgment that is not eligible for review by the United States Supreme Court simply would not follow from the jurisdictional statute that invigorated the <u>Rooker</u>-<u>Feldman</u> doctrine in the first place");[7] <u>Hill</u> v. <u>Town of Conway</u>, 193 F.3d 33, 40 (1st Cir. 1999) (because "<u>Rooker</u>-<u>Feldman</u> is keyed to § 1257," it therefore requires a judgment reviewable by the Supreme Court).  Under this logic, the scope of <u>Rooker</u>-<u>Feldman</u> would be limited to state court judgments susceptible to Supreme Court review -- in particular, final judgments, not interlocutory orders.  <u>See</u> 28 U.S.C. §§ 1257 (providing for review of "[f]inal judgments or decrees" rendered by highest state courts), 1258 (same for Puerto Rico Supreme Court).  Arguably, then, under <u>Cruz</u> and

_____

[7]Although the statute itself has changed since <u>Rooker</u> was decided, the changes have not been material to  the present issue, <u>see</u> <u>supra</u> note 5, and the negative inference drawn in <u>Rooker</u> applies equally today.

-8-

Hill, Rooker-Feldman would not apply to interlocutory orders.  That is the argument that the Federación makes here.

2.      Relevance of Preclusive Effect Under State Law

Our pre-Exxon Mobil case law also recognized, albeit not uniformly, an alternative conception of "final judgment."  The law of claim and issue preclusion (also known as res judicata and collateral estoppel) provides a notion of "final judgment" that is related to, but distinct from, finality for purposes of Supreme Court review.[8]  We have suggested, in some of our cases, that "[o]nly a state court adjudication that itself has preclusive effect can bring the Rooker-Feldman doctrine into play." Cruz, 204 F.3d at 21 n.5; see also Badillo-Santiago v. Naveira-Merly, 378 F.3d 1, 6 (1st Cir. 2004) ("Rooker-Feldman applies to state or territorial court judgments to which the federal courts would accord preclusive effect, and the federal courts 'can ascribe no greater preclusive force to a state court judgment than would the

_____

[8]The two concepts of finality serve very different purposes. The purpose of the final judgment rule of § 1257 is to prevent the Supreme Court from considering a case that has not reached final judgment.  It applies "vertically" within a single case's progress up through the appellate hierarchy.  By contrast, the purpose of res judicata (and its federal statutory codification, 28 U.S.C. § 1738) is to prevent federal and sister state trial courts from hearing a case that has reached final judgment.  It applies "horizontally" to parallel litigation or collateral attacks.

Moreover, whether a state court judgment is final for purposes of § 1257 is a question of federal law, Gotthilf v. Sills, 375 U.S. 79, 80 (1963) (per curiam), but whether it is final for purposes of preclusion is a question of state law, Roy v. City of Augusta, 712 F.2d 1517, 1520 (1st Cir. 1983).

courts of that state.'") (quoting <u>Cruz</u>, 204 F.3d at 21; internal citation omitted); <u>Pérez-Guzmán</u> v. <u>Gracia</u>, 346 F.3d 229, 238 n.5 (1st Cir. 2003) (same), <u>cert.</u> <u>denied</u>, 541 U.S. 960 (2004).[9]

Yet we have also stated, in apparent contradiction to the above cases, that <u>Rooker</u>-<u>Feldman</u> does <u>not</u> require a decision to have state law preclusive effect. See <u>Maymó-Meléndez</u> v. <u>Álvarez-Ramírez</u>, 364 F.3d 27, 32-33 (1st Cir.) (<u>Rooker</u>-<u>Feldman</u> is "broader and blunter" than res judicata, and does not impose res judicata's technical requirements, "[s]o, despite the disapproval of scholars, federal courts regularly use <u>Rooker</u>-<u>Feldman</u> to rebuff collateral attacks on prior state court judgments without purporting to apply the technical preclusion rules of res judicata"), <u>cert.</u> <u>denied</u>, 125 S. Ct. 110 (2004); <u>Mandel</u> v. <u>Town of Orleans</u>, 326 F.3d 267, 271 (1st Cir. 2003) ("<u>Rooker</u>-<u>Feldman</u> applies whether or not the federal and state causes of action are technically the same for purposes of claim preclusion, or whether all of the familiar conditions for issue preclusion are met.") (citation omitted); <u>Sheehan</u> v. <u>Marr</u>, 207 F.3d 35, 40 n.5 (1st Cir. 2000) (noting that "res judicata . . . and <u>Rooker</u>-<u>Feldman</u> are separate doctrines, [although] they have a 'close affinity' to one

---

[9]The "preclusive effect" requirement derives not from construction of § 1257, but rather from policy considerations. The most commonly stated rationale for a preclusive effect requirement is that it would be odd for <u>Rooker</u>-<u>Feldman</u> "to bar an action in federal court when that same action would be allowed in the state court of the rendering state." <u>Davis</u> v. <u>Bayless</u>, 70 F.3d 367, 376 (5th Cir. 1995).

another," and quoting <u>Charchenko</u> v. <u>City of Stillwater</u>, 47 F.3d 981, 983 n.1 (8th Cir. 1995), for the proposition that "<u>Rooker</u>-<u>Feldman</u> is broader than claim and issue preclusion because it does not depend on a final judgment on the merits").

C.        **<u>Exxon Mobil</u>**

These tests of state court judgment finality in our application of the <u>Rooker</u>-<u>Feldman</u> doctrine have now been superseded by the explanation of that doctrine in <u>Exxon Mobil</u>. We briefly summarize that case for context.

Saudi Basic Industries Corporation sued Exxon Mobil in Delaware state court for a declaratory judgment that it did not owe Exxon Mobil any money from a contractual agreement; Exxon Mobil counterclaimed for the money. Meanwhile, Exxon Mobil filed a declaratory judgment action in federal court as an "insurance policy" in case it lost the state court lawsuit. The state case went to judgment first, and the jury found for Exxon Mobil, awarding it a large verdict on its counterclaim. Saudi Basic appealed the judgment to the Delaware Supreme Court. <u>See</u> 125 S. Ct. at 1524-25.

Meanwhile, the federal action proceeded. Exxon Mobil's claims in federal court were essentially identical to its defenses and counterclaims in state court. On an interlocutory appeal related to foreign sovereign immunity, the Third Circuit <u>sua sponte</u> concluded that Exxon Mobil's claims were identical to claims

-11-

actually litigated in state court, and ordered the claim dismissed pursuant to the Rooker-Feldman doctrine.  See id. at 1525-26.

The Supreme Court unanimously reversed, holding:

> The Rooker-Feldman doctrine . . . is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments. Rooker-Feldman does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions.

Id. at 1521-22.  The Court specifically limited the doctrine to cases in the procedural posture of Rooker and Feldman themselves:

> Rooker and Feldman exhibit the limited circumstances in which this Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority[.]  In both cases, the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment. Plaintiffs in both cases, alleging federal-question jurisdiction, called upon the District Court to overturn an injurious state-court judgment. Because § 1257, as long interpreted, vests authority to review a state court's judgment solely in this Court, the District Courts in Rooker and Feldman lacked subject-matter jurisdiction.

Id. at 1526 (citations omitted).

-12-

In short, the Rooker-Feldman doctrine now applies only in the "limited circumstances" where "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment." Id. The doctrine "does not otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." Id. at 1522.

### III.

Exxon Mobil tells us when a state court judgment is sufficiently final for operation of the Rooker-Feldman doctrine: when "the state proceedings [have] ended." 125 S. Ct. at 1526. If federal litigation is initiated before state proceedings have ended, then -- even if the federal plaintiff expects to lose in state court and hopes to win in federal court -- the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction. See id. at 1526-28. On the other hand, if federal litigation is initiated after state proceedings have ended, and the plaintiff implicitly or explicitly "seek[s] review and rejection of [the state] judgment," id. at 1526, then a federal suit seeking an opposite result is an impermissible attempt to appeal the state judgment to the lower federal courts, and, under Rooker-Feldman, the federal courts lack jurisdiction.

-13-

As noted above, our prior tests of finality involved appealability under § 1257 and/or state law preclusive effect. Under Exxon Mobil, the Rooker-Feldman doctrine applies when the losing party in state court files suit in federal court "after the state proceedings ended." We now explore what it means for state proceedings to have "ended," and explain how this test differs from the tests we had set forth before Exxon Mobil.

Generally speaking, state proceedings will have "ended" in three situations. Two are obvious; the third perhaps is not.

First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have "ended." In this situation, the state court judgment would constitute a "[f]inal judgment[] or decree[] rendered by the highest court of a State in which a decision could be had" under § 1257, it would carry preclusive effect in virtually every state, and -- most relevant here -- it would qualify under Exxon Mobil's "ended" test.

Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also "ended." For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended. In this situation, the judgment would carry preclusive effect in virtually every state. It would usually not, however, be an appealable "[f]inal judgment[]

-14-

or decree[] rendered by the highest court of a State in which a decision could be had" under § 1257.  Nevertheless -- and this is what matters -- it qualifies under Exxon Mobil's "ended" test.[10]

Third, if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have "ended" within the meaning of Rooker-Feldman on the federal questions at issue.  We infer this meaning from a footnote in Exxon Mobil that provides an example of a federal suit that would be subject to Rooker-Feldman even though the state court litigation was still ongoing.

The example is a hypothetical propounded in ASARCO Inc. v. Kadish, 490 U.S. 605 (1989).  According to the Exxon Mobil Court, the hypothetical would fit within the reach of the reformulated Rooker-Feldman doctrine, even though the litigation had not completely ended, because the state proceedings had ended as to all federal questions.  Exxon Mobil, 125 S. Ct. at 1524 n.2.

In ASARCO, the plaintiffs sought state court declaratory and injunctive relief against an Arizona mineral leasing statute on

_____

[10]A more subtle version of this scenario is where the lower state court does not issue a judgment but merely an interlocutory order (e.g., a discovery order determining whether certain documents were privileged), and the parties then voluntarily terminate the litigation.  In this case, the state court issue would be neither appealable under § 1257 nor preclusive under the preclusion law of most states. Nevertheless, the state proceedings have ended, and the Rooker-Feldman doctrine precludes either party from later challenging the order in federal court.

-15-

the grounds of, inter alia, federal preemption. See 490 U.S. at 610. The trial court upheld the statute, but the Arizona Supreme Court reversed, and "remanded the case to the trial court with instructions to enter summary judgment for [plaintiffs], to enter a judgment declaring [the state law] invalid, and to consider what further relief, if any, might be appropriate." Id. The defendants petitioned for certiorari, which the United States Supreme Court granted. Id. at 610.

The plaintiffs, with the United States as amicus, contended that the Court lacked jurisdiction over the appeal. They raised two distinct jurisdictional arguments: that the state court judgment was not a "final judgment" under § 1257 because matters of relief remained to be litigated, and that the case was nonjusticiable because, although the plaintiffs had standing to file the suit under state law, they did not have standing under Article III. See id. at 611-12.

The Supreme Court rejected both arguments. It held that § 1257 jurisdiction was available under the doctrine of Cox Broadcasting Corp. v. Cohn, 420 U.S. 469 (1975),[11] and that, even

[11]Cox Broadcasting defines four situations in which a non-final judgment will nevertheless be considered "final" for purposes of § 1257:

[(1)] there are further proceedings -- even entire trials -- yet to occur in the state courts but where for one reason or another the federal issue is conclusive or the outcome of further proceedings preordained.
. . .

-16-

though the plaintiffs would not have been able to file the suit in federal court initially, the defendants nevertheless had standing to bring the appeal.  See ASARCO, 490 U.S. at 612, 617-19.

The Court also rejected the United States's suggestion that the defendants had to seek relief through a federal declaratory judgment action.  Id. at 620.  The Court observed that such an action would require the federal court "to readjudicate the very same issues that were determined in the state-court proceedings below," and "in essence[] would be an attempt to obtain direct review of the Arizona Supreme Court's decision in the lower federal courts" in violation of Rooker-Feldman.  Id. at 622-23.

---

[(2)] the federal issue, finally decided by the highest court in the State, will survive and require decision regardless of the outcome of future state-court proceedings.
. . .
[(3)] the federal claim has been finally decided, with further proceedings on the merits in the state courts to come, but in which later review of the federal issue cannot be had, whatever the ultimate outcome of the case.
. . .
[(4)] the federal issue has been finally decided in the state courts with further proceedings pending in which the party seeking review here might prevail on the merits on nonfederal grounds, thus rendering unnecessary review of the federal issue by this Court, and where reversal of the state court on the federal issue would be preclusive of any further  litigation on the relevant cause of action rather than merely controlling the nature and character of, or determining the admissibility of evidence in, the state proceedings still to come . . . [and] refusal immediately to review the state-court decision might seriously erode federal policy . . . .

420 U.S. at 479-83.

ASARCO, to summarize, was a case where state proceedings had not completely ended, but all federal questions had been finally resolved. The ASARCO Court held that the case had reached sufficient finality both to confer § 1257 jurisdiction under Cox Broadcasting, and to invoke Rooker-Feldman against any hypothetical federal action concerning the same questions. A footnote in Exxon Mobil reaffirms that position:

> The injury of which the [ASARCO] petitioners (the losing parties in state court) could have complained in the hypothetical federal suit would have been caused by the state court's invalidation of their mineral leases, and the relief they would have sought would have been to undo the state court's invalidation of the statute. The hypothetical suit in ASARCO, therefore, shares the characteristics of the suits in Rooker and Feldman, i.e., loser in state court invites federal district court to overturn state-court judgment.

125 S. Ct. at 1524 n.2. Thus, Exxon Mobil's explanation of the ASARCO hypothetical confirms that Rooker-Feldman applies where the state proceeding has ended with respect to the issues that the federal plaintiff seeks to have reviewed in federal court, even if other matters remain to be litigated.

This scenario prompts the question of how the lower federal courts should determine whether a state proceeding, still ongoing in some form, has ended with respect to a particular federal issue. We infer from Exxon Mobil that the Cox Broadcasting test of finality should be used for this purpose by the following reasoning. Exxon Mobil confirms that the ASARCO state court

-18-

litigation was sufficiently final (i.e., had "ended") for purposes of the Rooker-Feldman doctrine. See id. And ASARCO concluded that the state court litigation there was sufficiently final for Supreme Court review because it satisfied the Cox Broadcasting test. See 490 U.S. at 612. In short, Exxon Mobil and ASARCO, read together, suggest that if state court litigation is sufficiently final for Supreme Court review, then it is sufficiently final for purposes of the Rooker-Feldman doctrine.

Of course, Cox Broadcasting itself only answers the question of whether § 1257 jurisdiction is immediately available, whereas our present question is whether state proceedings have "ended." And we hasten to repeat that a proceeding may have "ended" under Exxon Mobil even when § 1257 jurisdiction would not have been available.[12] However, while appealability under § 1257 is not necessary to satisfy the Exxon Mobil "ended" test, it will almost always be sufficient.[13] Put another way, if a state court decision is final enough that the Supreme Court does have

---

[12]For example, if a lower state court issues a judgment and the losing party allows the time for appeal to expire, then the state proceedings have ended, but § 1257 jurisdiction would ordinarily not be available.

[13]By contrast, a preclusive state court judgment is not sufficient to trigger the Rooker-Feldman doctrine. In most states, a trial court judgment acquires preclusive effect as soon as it issues. See, e.g., O'Brien v. Hanover Ins. Co., 692 N.E.2d 39, 44 (Mass. 1998); Bartlett v. Pullen, 586 A.2d 1263, 1265 (Me. 1991); Silva v. Silva, 404 A.2d 829, 832 (R.I. 1979). While the state court judgment is pending on appeal, it carries preclusive effect, but (in most cases) the state proceedings have not yet "ended."

jurisdiction over a direct appeal, then it is final enough that a lower federal court <u>does not</u> have jurisdiction over a collateral attack on that decision. Therefore, except in unusual circumstances, if § 1257 jurisdiction would have been available under <u>Cox Broadcasting</u>, then the state proceedings have sufficiently "ended" for purposes of <u>Exxon Mobil</u>.[14] Of course, the opposite does not follow; as stated above, there are many situations where § 1257 jurisdiction would <u>not</u> be available, and yet state proceedings <u>have</u> ended. But where § 1257 jurisdiction <u>is</u> available -- either because an appeal has progressed to "final judgment," or under one of the <u>Cox Broadcasting</u> exceptions -- then, for purposes of the <u>Rooker</u>-<u>Feldman</u> doctrine, state proceedings will ordinarily be deemed to have "ended."

## IV.

Exxon Mobil means that our prior tests of finality (appealability under § 1257 and preclusive effect) are no longer applicable for <u>Rooker</u>-<u>Feldman</u> purposes. Simply put, a state proceeding may meet the "ended" test of <u>Exxon Mobil</u> even if it fails one or both of those prior tests. Consequently, the applicability of the <u>Rooker</u>-<u>Feldman</u> doctrine no longer turns on whether the state court decision was "final" or "preclusive." Rather, we examine the posture of the case in the state court --

---

[14]We do not decide how to apply <u>Exxon Mobil</u> in cases where the state proceedings have, for all practical purposes, ended as to the federal issue, but the <u>Cox Broadcasting</u> exceptions do not apply.

i.e., whether "state proceedings [have] ended," 125 S. Ct. at 1526 -- and the relief sought in the federal court.

This conclusion conflicts, to some extent, with some of our precedents. "Ordinarily, newly constituted panels in a multi-panel circuit should consider themselves bound by prior panel decisions." Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004). However, an exception applies "when a preexisting panel opinion is undermined by subsequently announced controlling authority, such as a decision of the Supreme Court." Id.

That is the case here. Exxon Mobil holds that federal courts lack jurisdiction to review a state court judgment in a federal case initiated "after the state proceedings ended." 125 S. Ct. at 1526. While such judgments will often qualify as "final judgments" under § 1257 and/or carry state law preclusive effect, neither § 1257 finality nor state law preclusive effect is necessary under the Exxon Mobil test.

Consequently, we recognize that Exxon Mobil has effectively abrogated the dictum in Cruz stating that "denying jurisdiction based on a state court judgment that is not eligible for review by the United States Supreme Court simply would not follow from the jurisdictional statute that invigorated the Rooker-Feldman doctrine in the first place," 204 F.3d at 21 n.5, and the similar statement in Hill holding that, because "Rooker-Feldman is keyed to § 1257," it therefore requires a judgment

immediately reviewable by the Supreme Court, 193 F.3d at 40. Under Exxon Mobil, state proceedings may have "ended" even though § 1257 review would not be available.

Similarly, we recognize that Exxon Mobil has effectively abrogated Badillo-Santiago, Pérez-Guzmán, and Cruz to the extent that they state that Rooker-Feldman doctrine only applies to state court judgments with preclusive effect. See Badillo-Santiago, 378 F.3d at 6 ("Rooker-Feldman applies to state or territorial court judgments to which the federal courts would accord preclusive effect, and the federal courts 'can ascribe no greater preclusive force to a state court judgment than would the courts of that state.'") (quoting Cruz, 204 F.3d at 21)); Pérez-Guzmán, 346 F.3d at 238 n.5 ("'[O]nly a state court adjudication that itself has preclusive effect can bring the Rooker-Feldman doctrine into play.'") (quoting Cruz, 204 F.3d at 21 n.5); Cruz, 204 F.3d at 21 n.5 ("Only a state court adjudication that itself has preclusive effect can bring the Rooker-Feldman doctrine into play."). Under Exxon Mobil, state law preclusive effect is simply not determinative.

**V.**

We now apply the Rooker-Feldman clarifications provided by Exxon Mobil to this case. As we understand it, the Federación posits that the Puerto Rico court's decision was interlocutory, that § 1258 does not give the Supreme Court jurisdiction over

-22-

interlocutory (non-final) judgments, and that, therefore, Rooker-Feldman should not apply.  Under Rooker-Feldman, as clarified by Exxon Mobil, these arguments are largely irrelevant.

Rather, what matters is that the state court proceedings have ended with regard to the sole federal issue, namely, whether the Board's jurisdiction is preempted by the NLRA.  That jurisdictional question is separate and independent from the merits of the dispute.  It logically should be, and has been, decided in advance of a trial on the merits.  Moreover, the Puerto Rico Supreme Court has declined to disturb the lower court's decision, thus exhausting the possibility of further review in the Puerto Rico court system.[15]

We find that this case falls neatly within one of the situations described in Cox Broadcasting:

---

[15]The Federación contends that, despite losing its jurisdictional argument multiple times before both the Board and the Puerto Rico courts, it has not lost its right to request further review of its jurisdictional defense before those very tribunals.  Since it might yet prevail on this defense, the Federación reasons, the Puerto Rico decision is not final -- or, in the language of Exxon Mobil, the state proceedings have not ended.

We consider it highly unlikely that the Federación could yet persuade the Puerto Rico courts that they lack jurisdiction.  The Puerto Rico Court of Appeals concluded that the Federación's activities neither "impact[] nor substantially impede[] . . . the flow of commerce between Puerto Rico and any other state, territory of the United States or country," and consequently that "the [Board] did not err when it decided that it had jurisdiction to deal with the case of record." (emphasis deleted).  This holding appears to create law of the case and leave little room for further argument concerning the Board's jurisdiction.

> [W]here the federal issue has been finally decided in the state courts with further proceedings pending in which the party seeking review [in the Supreme Court] might prevail on the merits on nonfederal grounds, thus rendering unnecessary review of the federal issue by [the Supreme] Court, and where reversal of the state court on the federal issue would be preclusive of any further litigation on the relevant cause of action . . . if a refusal immediately to review the state-court decision might seriously erode federal policy, the Court [has jurisdiction].

420 U.S. at 482-83; see also Belknap, Inc. v. Hale, 463 U.S. 491, 497 & n.5 (1983) (accepting jurisdiction over state court decision that unfair labor practice charge brought in state court was not within jurisdiction of NLRB); Local No. 438 Constr. & Gen. Laborers Union v. Curry, 371 U.S. 542, 548-50 (1963) (accepting jurisdiction over state court's injunction against labor union picketing; issue to be further litigated on the merits was legality of picketing, which was entirely separate from the union's federal defense, that NLRB's jurisdiction over labor dispute was exclusive); cf. Mitchell v. Forsyth, 472 U.S. 511, 525 n.8 (1985) ("[S]tate-court decisions rejecting a party's federal-law claim that he is not subject to suit before a particular tribunal are 'final' for purposes of our certiorari jurisdiction under 28 U.S.C. § 1257."). If an interlocutory state decision on a federal issue would be reviewable by the Supreme Court under one of the Cox Broadcasting exceptions,

-24-

then (absent unusual circumstances not present here) state court proceedings have "ended" for purposes of Exxon Mobil.[16]

With these issues resolved, this case turns out to be as simple as it first appeared. The Federación litigated its federal labor law preemption defense before the Puerto Rico Court of Appeals. That court found that the Federación was not engaged in interstate commerce and that the Board's jurisdiction was not preempted by federal labor law; the Puerto Rico Supreme Court did not disturb that judgment. The Federación's subsequent federal claim seeks a declaration that the Board's jurisdiction was preempted by federal labor law. That claim could succeed only if the federal court were to hold that the Puerto Rico decision was incorrect. As in Rooker and Feldman, here "the losing party in state court filed suit in federal court after the state proceedings ended, complaining of an injury caused by the state-court judgment and seeking review and rejection of that judgment," Exxon Mobil, 125 S. Ct. at 1526. Consequently, the district court lacked jurisdiction to review the state court decision, despite the interlocutory nature of the Puerto Rico courts' decisions. The district court properly dismissed the complaint.

**Affirmed**.

---

[16]Again, the relevance of Cox Broadcasting is not that appealability under § 1257 is required in order for the proceedings to have "ended" under Exxon Mobil. But when an interlocutory state court decision is appealable under Cox Broadcasting, then the "ended" test, as we construe it, will almost always be satisfied.