**Not for Publication in West's Federal Reporter**

# United States Court of Appeals
## For the First Circuit

Nos. 08-1956, 08-2559

RICHARD A. SILVA, WALTER R. SILVA,

Plaintiffs, Appellants,

v.

COMMONWEALTH OF MASSACHUSETTS, JUSTICES OF THE
MASSACHUSETTS LAND COURT, RUTH PELLEGRINI,

Defendants, Appellees.

APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Rya W. Zobel, U.S. District Judge]

Before

Howard, Selya, and Ebel,[*]
Circuit Judges.

William A. Hahn, with whom Hahn & Matkov was on the
briefs, for appellants.
David Aaron Guberman, Assistant Attorney General, with
whom Martha Coakley, Attorney General of Massachusetts, was
on the briefs, for appellees Commonwealth of Massachusetts
and the Justices of the Massachusetts Land Court.
Paul R. Collier III, with whom Roger Bertling, Michael
Flannery and WilmerHale Legal Services Center were on the
briefs, for appellee Ruth Pellegrini.

September 11, 2009

---

[*] Of the Tenth Circuit, sitting by designation.

**EBEL, Circuit Judge.** In these appeals, Plaintiffs-Appellants Richard A. and Walter R. Silva challenge the district court's decisions dismissing two federal actions by which the Silvas challenged foreclosure proceedings occurring in Massachusetts state court. Having jurisdiction under 28 U.S.C. § 1291, we AFFIRM.

## I. BACKGROUND

The Silvas and Defendant-Appellee Ruth Pellegrini are siblings. Their mother died in either 1975 or 1976. At the time of their mother's death, Pellegrini and her children were living with her mother in the family home at 24 Clifford Street, Readville, Massachusetts. However, in her will, the mother left the Readville home to the Silvas. The Silvas, nonetheless, initially agreed that Pellegrini could continue to live in the home. She did so, paying the house taxes and utilities but no rent.

In 1976, the Silvas obtained a $25,000 loan from a bank, securing that debt with a mortgage on the house at 24 Clifford Street. The bank recorded the mortgage in the Suffolk County Registry of Deeds.

In 1981, the Silvas tried unsuccessfully to evict Pellegrini. Because she refused to vacate the house, the Silvas stopped making payments on the mortgage. As a result, the bank started foreclosure proceedings in February

1981.  In order "[t]o avoid losing her home, Ms. Pellegrini purchased the note" from the bank in May 1981.  Pellegrini recorded the bank's transfer of its note to her in the Suffolk County Registry of Deeds.  The Silvas never made any mortgage payments to Pellegrini.

## A.  Pellegrini's foreclosure and state action to quiet title

In 2000, Pellegrini sought to foreclose on the mortgage she had purchased from the bank almost twenty years earlier. Pellegrini did so using a non-judicial foreclosure mechanism provided for under Massachusetts law — foreclosure by entry. See Mass. Gen. Laws ch. 244, §§ 1-2.[1]  In compliance with

---

[1]Massachusetts General Laws ch. 244, § 1 provides that

> [a] mortgagee may, after breach of condition of a mortgage of land, recover possession of the land mortgaged by an open and peaceable entry thereon, if not opposed by the mortgagor or other person claiming it, or by action under this chapter; and possession so obtained, if continued peaceably for three years from the date of recording of the memorandum or certificate as provided in section two, shall forever foreclose the right of redemption.

Massachusetts General Laws ch. 244, § 2 further provides:

> If an entry for breach of condition is made without a judgment, a memorandum of the entry shall be made on the mortgage deed and signed by the mortgagor or person claiming under him, <u>or a certificate, under oath, of two competent witnesses to prove the entry shall be made</u>.  Such memorandum or certificate shall after the entry, except as provided in section seventy of chapter one hundred and eighty-five, be recorded in the registry of deeds
(continued...)

the Massachusetts foreclosure-by-entry statute, Pellegrini "entered" the home at 24 Clifford Street, observed by two witnesses, and then recorded with the county registry of deeds a notice of the foreclosure and a certificate from the two witnesses attesting that the foreclosure by entry had occurred. After the expiration of the three-year redemption period that followed the foreclosure, see Mass. Gen. Laws ch. 244, § 1, Pellegrini filed an action in the Massachusetts Land Court, on September 22, 2003, seeking to remove any cloud on her title to 24 Clifford Street.[2] The

---

[1](...continued)
for the county or district where the land lies, with a note of reference, if the mortgage is recorded in the same registry, from each record to the other. Unless such record is made, the entry shall not be effectual for the purposes mentioned in the preceding section.

(Emphasis added.)

[2]Although Pellegrini had complied with all of the state-law requirements for effecting a foreclosure by entry, she failed to comply with the Massachusetts procedures implementing the federal Servicemembers Civil Relief Act, 50 U.S.C. App. §§ 501-96 (Supp. 2009). See generally Beaton v. Land Court, 326 N.E.2d 302, 304 (Mass. 1975) (discussing Massachusetts statutes implementing the federal Relief Act). Among other things, the federal relief act protects military personnel from foreclosure on their property while they are on active duty. See 50 U.S.C. § 533(c) (as revised in 2003). Because there is no indication that either of the Silvas fell under the protection provided by this federal statute, however, Pellegrini's failure to comply with the Massachusetts procedures implementing the federal relief act had no effect on the validity of the foreclosure. See Beaton, 326 N.E.2d at 305 (noting that, "[i]f a foreclosure
(continued...)

- 4 -

Silvas defended, arguing among other things that they were being denied their property without due process. The Land Court rejected that argument, concluding that the statutory requirements for conducting a foreclosure by entry were sufficient to satisfy due process and that Pellegrini had complied with those statutory requirements. The Land Court, therefore, entered judgment for Pellegrini, declaring that she held title to 24 Clifford Street "free and clear of the [Silvas'] claims."

The Silvas filed a motion seeking reconsideration, which the Land Court denied. But the Land Court apparently failed to notify the parties of its decision, and the Silvas did not discover the denial until four months later, after the time to file an appeal had expired.

## B. Silvas' first federal action

Because it appeared that the Silvas would be unable to pursue a timely appeal in the state-court action, they instead filed a complaint in federal court, naming as Defendants Pellegrini, the Commonwealth of Massachusetts,

---

[2](...continued) were otherwise properly made, failure to comply with the [Servicemembers Civil] Relief Act would not render the foreclosure invalid as to anyone not entitled to the protection of that act"). But there would remain a cloud on Pellegrini's title until she filed suit to establish that neither Silva was entitled to relief under the federal statute. See id.

and the Justices of the Massachusetts Land Court. Soon thereafter, the Massachusetts Appeals Court agreed to hear the Silvas' untimely appeal from the Land Court decision. In light of that, the federal district court dismissed the Silvas' federal action, based upon the Younger abstention doctrine.[3]

## C. State appeal of the Land Court's decision

Before the Massachusetts Appeals Court, the Silvas argued again, among other things, that they had been denied their property without due process. That state appellate court upheld the Land Court's decision, concluding that the Silvas had received notice of the foreclosure through Pellegrini's compliance with the requirements of the Massachusetts foreclosure-by-entry statute. See Pellegrini v. Silva, 876 N.E.2d 498 (Table), 2007 WL 3333247, at *2-3 (Mass. App. Ct. 2007) (unpublished). In light of that, the Appeals Court further held that it need not address the question of whether due process requirements even apply to non-judicial foreclosures. See id. at *3.

---

[3]"In the absence of extraordinary circumstances, interests of comity and the respect for state processes demand that federal courts should abstain from interfering with ongoing state judicial proceedings." Esso Standard Oil Co. v. Lopez-Freytes, 522 F.3d 136, 143 (1st Cir. 2008) (citing, e.g., Younger v. Harris, 401 U.S. 37 (1971)).

The Massachusetts Supreme Judicial Court denied further review.  See Pellegrini v. Silva, 880 N.E.2d 413 (Table) (Mass. Jan. 31, 2008).  Although the Silvas could have at that point sought further relief by filing a petition for a writ of certiorari with the United States Supreme Court, see 28 U.S.C. § 1257(a),[4] the Silvas did not pursue that avenue of possible review.

## D.  Silvas' Fed. R. Civ. P. 60(b) motion to reopen the first federal action

In light of their final defeat in Massachusetts state court, the Silvas filed a Fed. R. Civ. P. 60(b) motion seeking relief from the district court's earlier decision dismissing their first federal action.  The district court denied that Rule 60(b) motion.  In appeal No. 08-1956, currently before this court, the Silvas challenge that decision.

---

[4]Section 1257(a), 28 U.S.C., provides:

Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States.

- 7 -

**E.  Silvas' second federal action**

Less than a week after the Silvas filed their Rule 60(b) motion seeking to reopen their first federal action, the Silvas filed a second federal action.  This time, the Silvas sued Pellegrini and the Commonwealth, again challenging the state-court foreclosure proceedings.  The district court dismissed this second federal action under the Rooker-Feldman doctrine.[5]  The Silvas now appeal that decision in appeal No. 08-2559.

**II.  DISCUSSION**

**A.  Appeal No. 08-2559**

We first address appeal No. 08-2559, in which the Silvas challenge the district court's decision to dismiss their second federal action under the Rooker-Feldman doctrine.[6]

**1.  Standard of review**

The Rooker-Feldman doctrine implicates the district court's subject-matter jurisdiction.  See Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 291-92 (2005); see also Geiger v. Foley Hoag LLP Ret. Plan, 521 F.3d 60, 65 (1st Cir. 2008).  Therefore, we will review the district

---

[5]Rooker v. Fid. Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

[6]Although this is the Silvas' second appeal in time, it makes sense analytically to address it first.

court's dismissal de novo. See Federacion de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de Puerto Rico, 410 F.3d 17, 20 (1st Cir. 2005); see also Puerto Ricans for Puerto Rico Party v. Dalmau 544 F.3d 58, 66 (1st Cir. 2008).

## 2. Application of the Rooker-Feldman doctrine

28 U.S.C. § 1257 vests the United States Supreme Court with exclusive "jurisdiction over appeals from final state-court judgments." Lance v. Dennis, 546 U.S. 459, 463 (2006) (per curiam); see also Exxon Mobil, 544 U.S. at 291-92. In light of that exclusive jurisdictional grant, "[t]he Rooker-Feldman doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging state-court judgments rendered before the district court proceedings commenced.'" Id. at 460 (quoting Exxon Mobil, 544 U.S. at 284)(emphasis added). The Rooker-Feldman doctrine, however, is "confined to [1] 'cases brought by state-court losers [2] complaining of injuries caused by state-court judgments [3] rendered before the district court proceedings commenced and [4] inviting district court review and rejection of those judgments.'" Lance, 546 U.S. at 464 (numbering added) (quoting Exxon Mobil, 544 U.S. at 284); see also Coors Brewing Co. v. Mendez-Torres, 562 F.3d 3, 19 (1st Cir.

- 9 -

2009).  Because it is clear in this case that the Silvas were the unsuccessful parties in the state-court foreclosure action, we focus on the remaining three factors set forth in <u>Lance</u>.

>       **a.    Whether the Silvas' second federal action "complain[s] of injuries caused by state-court judgments"**

It is clear that the Silvas' second federal action complains of injuries caused by the state-court judgment entered in the Massachusetts foreclosure action.  In the complaint in their second federal action, the Silvas alleged:

> Pellegrini used a state statute (MGL c. 244) in such a way as not to require actual notice of proceedings depriving them of their title to their property . . .
>
> .  .  .  .
>
> 28. The Silvas raised the federal constitutional due process issue under the Fifth And Fourteenth Amendments at every level of the Massachusetts state courts, but such courts chose not to address the constitutional questions.
>
> 29.  There is a real and actual controversy between the parties in that defendant Pellegrini takes the position that the state statute (c. 244) provides for and allows the deprivation of real property without actual and personal notification to the record title holders, and the Silvas contend that any such state law would be unconstitutional on its face and/or as applied to the Silvas or their real property under the Fifth and Fourteenth Amendments to the United States Constitution.
>
> 30.  Moreover, defendant Pellegrini is taking the position that since she followed MGL c. 244, and

- 10 -

even though the Silvas did not receive actual or personal notification of what she was doing, that under the state statute the Silvas have lost all right, title and interest in their Readville house.

These alleged injuries stem directly from the judgment entered in the state foreclosure action upholding the rights of Ms. Pellegrini to take this very action. See Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps, 471 F.3d 220, 223 (1st Cir. 2006) (applying Rooker-Feldman doctrine where, regardless of how the claim is phrased, "the only real injury to Plaintiffs is ultimately still caused by a state-court judgment"); see also Puerto Ricans for Puerto Rico Party, 544 F.3d at 68 (in determining whether the Rooker-Feldman doctrine applies in a given case, comparing the "core issues" raised in the state-court action with those asserted in the federal action).

### b. Whether the state-court judgment in the foreclosure proceeding "was rendered before" the Silvas commenced their second federal action

In determining whether the state-court judgment was "rendered before the [federal] district court proceeding commenced," Exxon Mobil, 544 U.S. at 284, Exxon Mobil directs that "a state court judgment is sufficiently final for operation of the Rooker-Feldman doctrine[] when 'the state proceedings [have] ended,'" Federacion de Maestros,

410 F.3d at 24 (quoting Exxon Mobil, 544 U.S. at 291).  The First Circuit has further concluded that, for Rooker-Feldman purposes, "when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state court proceedings have 'ended.'"[7]  Id., at 24.

In this case, the state foreclosure proceeding had certainly "ended" by the time the state's highest court, the Massachusetts Supreme Judicial Court, denied the Silvas further review on January 31, 2008.  See Pellegrini, 880 N.E.2d at 413 (Table).  The Silvas initiated their second federal action two months later, on March 25, 2008.  Thus, the state-court proceedings had ended, for Rooker-Feldman purposes, before the Silvas commenced their second federal action.

   c.  **Whether the Silvas' second federal action "invit[ed] district court review and rejection of [the state-court] judgments"**

The Silvas asserted two claims in their second federal action: 1) seeking a declaration that any state law that

_____

   [7]The First Circuit has also recognized two other circumstances, not relevant here, when a state-court proceeding will have "ended" for Rooker-Feldman purposes: 1) "if the state action has reached a point where neither party seeks further action"; and 2) "if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated." Federacion de Maestros, 410 F.3d at 24-25.

- 12 -

"allows the deprivation of property without actual and personal notice to the record title holders of real estate . . . is defective and unconstitutional under the Fifth and Fourteenth Amendments to the United States Constitution"; and 2) alleging that Mass. Gen. Law ch. 244, "to the extent that it does not require actual and personal notification and a timely and meaningful opportunity to be heard to protect one's property, is unconstitutional on its face and/or as applied to the Silvas and/or their real estate." As relief, the Silvas asked the district court to:

1. Enter a temporary restraining order enjoining the Commonwealth of Massachusetts, its courts, counties, towns and any other public officer from in any way enforcing, carrying out or acting upon MGL c. 244 generally or as it is applied to the Silvas and their property.

2. After hearing, enter a preliminary injunction consistent with prayer 1 above.

3. Enter a temporary restraining order enjoining defendant Pellegrini from alienating or encumbering the Silvas' house at 24 Clifford Street, Readville pending resolution of this action.

4. After hearing, enter a preliminary injunction consistent with prayer 3 above.

5. Declare MGL c. 244 and/or the Massachusetts state foreclosure procedure either on their face or as applied to the Silvas and their property violates the United States Constitution, Amendments Five and Fourteen, and 42 USC sec. 1983.

6. Award the Silvas their damages for any unconstitutional application of MGL c. 244 to their real estate in Readville, Massachusetts.

7. Award the Silvas their costs and legal fees under 42 USC sec. 1988.

8. Such other relief as the Court deems just and appropriate.

In order for the district court to grant the Silvas this relief that they requested, the district court would have "to declare that the state court wrongly decided [the Silvas'] claim" in the state foreclosure action. Davison, 471 F.3d at 223. And "[t]he Rooker-Feldman doctrine prevents [the district court] from doing this." Id. This bar applies notwithstanding that the Silvas are asserting in their federal action a federal constitutional claim pursuant to 42 U.S.C. § 1983. See Diva's Inc. v. City of Bangor, 411 F.3d 30, 42-43 (1st Cir. 2005) (applying Rooker-Feldman doctrine to § 1983 action, but concluding that doctrine did not deprive the federal district court of subject-matter jurisdiction in that particular case).

The Silvas contend that their second federal action seeks different relief than that sought in the state-court foreclosure proceedings because, in federal court, they are challenging the constitutionality of the Massachusetts foreclosure-by-entry statute. It may be true that, "if the plaintiff alleges a constitutional violation by an adverse party independent of the injury caused by the state court judgment, the [Rooker-Feldman] doctrine does not bar

- 14 -

jurisdiction." Davison, 471 F.3d at 222 (emphasis added). But here, the Silvas themselves alleged in their federal complaint that they "raised the federal constitutional due process issue under the Fifth and Fourteenth Amendments at every level of the Massachusetts state courts." Thus, the Silvas' federal claim challenging the constitutionality of the Massachusetts foreclosure-by-entry statute is not "independent of the injury caused by the state court judgment." Davison, 471 F.3d at 222.

The Silvas counter that the state courts never addressed the merits of their due process argument. But we cannot agree. Both the Land Court and the Massachusetts Appeals Court addressed and rejected the Silvas' due process argument.

The Massachusetts Land Court rejected the Silvas' due process argument by concluding that the recorded certificate of entry was "adequate and proper notice, and the Silvas cannot credibly claim that it violates due process." This conclusion was upheld by the Massachusetts Appeals Court, which noted that the Massachusetts Supreme Judicial Court previously ruled that the duly recorded entry under Mass. Gen. Laws ch. 244, § 2 provided "full and authoritative notice, to all persons," citing, e.g., Bennett v. Conant, 10 Cush. 163, 167 (Mass. 1852). Pellegrini, 2007 WL 3333247,

at *2. Full and authoritative notice to all persons would satisfy due process notice requirements and, accordingly, the Massachusetts Appeals Court apparently felt it was not necessary in this case to address whether or not the due process clause was even applicable because of the possibility that a foreclosure by entry and recorded notice might not involve state action: "this case presents no 'occasion to determine whether the due process clause even has any applicability to nonjudicial mortgage foreclosures.'" Id. at *3 (quoting Beaton, 326 N.E.2d at 307 n.6). Thus, the Massachusetts courts expressly rejected the Silvas' due process claim.

Moreover, even if we were to assume the truth of the Silvas' allegation that, although they "raised the federal constitutional due process issue under the Fifth and Fourteenth Amendments at every level of the Massachusetts state courts," the state "courts chose not to address the constitutional questions," we would still conclude that Rooker-Feldman bars the Silvas' second federal action. This court could not grant the Silvas the relief they request without concluding that the Massachusetts state courts erred in the decisions entered in the state foreclosure proceedings. Cf. Davison, 471 F.3d at 223 (applying Rooker-Feldman doctrine after rejecting federal plaintiffs'

- 16 -

argument that they never got their "day in [state] court" because of state court's procedural ruling). The ruling of the Massachusetts Appeals Court expressly rejected the Silvas' due process claim and no federal relief could be granted without challenging that state court holding.

### d. Conclusion as to the application of the **Rooker**-**Feldman** doctrine

For all of the foregoing reasons, the district court did not err in dismissing the Silvas' second federal action for lack of subject-matter jurisdiction under the Rooker-Feldman doctrine.

### 3. Preclusion principles provide an alternate reason to affirm the district court's decision to dismiss the Silvas' second federal action

Even if the district court erred in dismissing the Silvas' second federal action based upon Rooker-Feldman principles, which we do not conclude, dismissal was, in any event, appropriate under preclusion principles. See Aguilar v. U.S. Immigration & Customs Enforcement Div., 510 F.3d 1, 8 (1st Cir. 2007) (noting that an appellate court can affirm the district court's decision to dismiss an action for lack of subject-matter jurisdiction "on any ground made apparent by the record (whether or not relied upon by the lower court)"); see also SBT Holdings, LLC v. Town of Westminster, 547 F.3d 28, 36 (1st Cir. 2008) (noting that appellate court can "affirm a judgment of dismissal on any independently

sufficient ground") (quotation omitted); Hernandez-Santiago v. Ecolab, Inc., 397 F.3d 30, 34 (1st Cir. 2005) (per curiam) (noting that appellate court "could still affirm if dismissal of the complaint would be the obvious result of a remand").

"Under the full faith and credit statute, 28 U.S.C. § 1738, a judgment rendered in a state court is entitled to the same preclusive effect in federal court as it would be given within the state in which it was rendered." Giragosian v. Ryan, 547 F.3d 59, 63 (1st Cir. 2008) (quotation omitted), cert. denied, 129 S. Ct. 2020 (2009). Here, because the state foreclosure proceeding occurred in Massachusetts courts, we will look to Massachusetts preclusion principles. "Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion)." Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 52 (1st Cir. 2008). Both apply here.

### a. Res judicata, or claim preclusion, bars the Silvas' federal claims against Pellegrini

Res judicata, or claim preclusion, "prevents the relitigation of all claims that a litigant had the opportunity and incentive to fully litigate in an earlier action." Giragosian, 547 F.3d at 63 (quotation, alterations

omitted) (applying Massachusetts law). Under Massachusetts law, "[t]he operation of res judicata requires the presence of three elements: (1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Andrews Robinson, 547 F.3d at 52 (quotation omitted).

Those three elements are present here. First, the Silvas' federal claims asserted against Pellegrini involve the same parties as were involved in the state foreclosure proceeding.

Second, "Massachusetts deems causes of action identical for claim preclusion purposes if they grow out of the same transaction, act, or agreement, and seek redress for the same wrong." Id. (quotation, alterations omitted). "Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based upon the same nucleus of operative facts." Id. (applying Massachusetts law). "Facts forming a common nucleus are those meeting the following criteria: 1) whether the facts are related in time, space, origin or motivation; 2) whether the facts form a convenient trial unit; and 3) whether treating the facts as a unit conforms to the parties' expectations." Herman v. Meiselman, 541 F.3d 59,

62-63 & 62 n.6 (1st Cir. 2008) (quotation omitted) (applying federal and Massachusetts preclusion principles, which the court noted were the same).  It is clear that the Silvas' federal claims asserted against Pellegrini in the second federal action stem from the same nucleus of operative facts as the claims at issue in the state foreclosure action — Pellegrini's use of Massachusetts' foreclosure-by-entry mechanism to take clear title to the house at 24 Clifford Lane.

Lastly, as previously discussed, the state foreclosure action is final.  And the state courts' resolution of those proceedings was based upon the merits of the issues presented.

**b.   Collateral estoppel, or issue preclusion, bars the Silvas' federal claims asserted against the Commonwealth in the Silvas' second federal action**

The Massachusetts courts use several formulations interchangeably to describe the prerequisites for issue preclusion, but the Supreme Judicial Court recently stated that issue preclusion applies when (1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication. Additionally, [4] the issue decided in the prior adjudication must have been essential to the earlier judgment. Massachusetts courts also require that [5] appellate review must have been available in the earlier case before issue preclusion will arise.

- 20 -

Pisnoy v. Ahmed (In re Sonus Networks, Inc., Shareholder Derivative Litig.), 499 F.3d 47, 56-57 (1st Cir. 2007) (quotations, citations omitted) (several numbers added). Those elements are met here as to the Silvas' federal claims asserted against the Commonwealth in the second federal action.

First, as previously explained, there was a final adjudication on the merits in the state foreclosure proceeding. Second, clearly the parties against whom the Commonwealth seeks to assert the prior state adjudication — the Silvas — were parties to that prior state proceeding.

Third, "[i]ssue preclusion prevents relitigation of the same issues actually litigated in [the] earlier judgment." Id. at 62. "The question is whether there is anything in the" Silvas' second federal action "that amounts to a significant change . . . from what was presented to the state court." Id. (quotation omitted.) There was not.

Fourth, the relevant issues adjudicated in the state foreclosure proceeding — whether Pellegrini failed to give the Silvas adequate notice of her foreclosure by entry, and whether Pellegrini's use of that state non-judicial foreclosure mechanism deprived the Silvas of their property

without due process — was essential to the state courts' decisions upholding Pellegrini's foreclosure by entry.

Lastly, appellate review was available and pursued by the Silvas in the state foreclosure proceeding. For these reasons, Massachusetts' collateral estoppel or issue preclusion principles bar the Silvas from pursuing the claims they assert in their second federal action against the Commonwealth.

### c. Conclusion as to preclusion

As an alternative to dismissal on the basis of Rooker-Feldman, we conclude, for the foregoing reasons, that dismissal was appropriate based on preclusion principles.

## B. Appeal No. 08-1956

Turning to appeal No. 08-1956, the Silvas challenge the district court's decision to deny their motion seeking reconsideration, under Fed. R. Civ. P. 60(b)(5) and (6), of the court's earlier decision to dismiss their first federal action.

### 1. Standard of review

This court generally will review the district court's decision denying the Silvas' Rule 60(b) motion for an abuse of discretion. See United States v. 6 Fox Street, 480 F.3d 38, 46 (1st Cir. 2007). Where "the district court's exercise of discretion is premised on an erroneous legal

principle," however, "we review that legal error <u>de</u> <u>novo</u>." <u>United States</u> v. <u>Kayser-Roth Corp.</u>, 272 F.3d 89, 100 (1st Cir. 2001).

**2.  Rule 60(b)(5) and (6) relief**

The district court dismissed the Silvas' first federal action based upon <u>Younger</u> abstention, in light of the ongoing state foreclosure proceedings.  After the Massachusetts courts entered final judgment in the state litigation, quieting title in 24 Clifford Street in Pellegrini, the Silvas sought to reopen the first federal action under Rule 60(b)(5) and (6).

In pertinent part, Rule 60(b) provides:

> **Grounds for Relief from a Final Judgment, Order, or Proceeding.**  On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
>
> . . . .
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).  "Although many courts have indicated that Rule 60(b) motions should be granted liberally, [the First] Circuit has taken a harsher tack.  Because Rule 60(b) is a vehicle for extraordinary relief, motions invoking the rule should be granted only under exceptional

- 23 -

circumstances." _Davila-Alvarez_ v. _Escuela de Medicina Universidad Central del Caribe_, 257 F.3d 58, 63-64 (1st Cir. 2001) (quotations, citations, footnote omitted) (reading this principle "with the gloss supplied by the Supreme Court in _Pioneer Inv. Servs. Co._ v. _Brunswick Assocs. Ltd. P'ship_, 507 U.S. 380 (1993) (addressing "excusable neglect" under Bankr. Rule 9006 and, by analogy, Fed. R. Civ. P. 60(b))). Rule 60(b) "must be applied so as to recognize the desirability of deciding disputes on their merits, while also considering the importance of finality as applied to court judgments." _Id._ at 64 (quotation omitted).

Here, the Silvas have not shown that the district court abused its discretion in refusing to reopen their first federal action. The Silvas contend that the district court should have granted them Rule 60(b) relief for this reason: According to the Silvas, the district court originally dismissed their first federal action under _Younger_ abstention principles, believing that the Massachusetts courts would provide the Silvas with a full and fair opportunity to litigate their due process challenge to Pellegrini's foreclosure by entry. The Silvas assert, however, that the Massachusetts Appeals Court never addressed their due process argument. Therefore, the Silvas claim that the federal district court should have granted

them Rule 60(b) relief from the earlier dismissal of their first federal action, reopened that federal action and addressed the merits of their federal claims.

We disagree with the Silvas that the state courts did not address the Silvas' due process argument. As previously explained, both the Massachusetts Land Court and the Massachusetts Appeals Court rejected the Silvas' due-process arguments. In light of that, we cannot conclude the district court abused its discretion in refusing to reopen the Silva's first federal action.[8]

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the district court's decision to deny Rule 60(b) relief from its dismissal of the Silvas' first federal action, as well as the district court's decision to dismiss the Silvas' second federal action.

---

[8]In light of our conclusion that the district court did not abuse its discretion in denying the Silvas Rule 60(b) relief, we need not address Appellees' other arguments.