MICHAEL W. ALBANO *vs.* JORDAN MARSH COMPANY.

Suffolk.    April 11, 1974. — May 24, 1974.

Present: HALE, C.J., KEVILLE, & ARMSTRONG, JJ.

*Landlord and Tenant,* Termination of relations.   *Evidence,* Admitted
de bene.   *Words,* "Pending."

There was no error in striking out certain evidence at the close of
trial in a case where the evidence had been admitted on the condi-
tion that further evidence would be offered to show its relevance
and materiality and no such further evidence had been offered.
[311]
Where the time for performance of certain obligations of the lessor
under a lease was extended during the pendency of proceedings
brought by third persons, one of which was a certiorari proceeding
which had gone to judgment, with no appeal being taken, before
the extension, although it was not marked "dismissed" until nearly
three years later, it was held that the certiorari proceeding was
not "pending" at the time of the extension.   [312]
Where it appeared that a lease required the lessor within a certain
time to construct for the use of the lessee for a term of years a
department store in a prospective shopping center, that due to
difficulties encountered by the lessor in obtaining financing and
otherwise the time for the lessor's performance was extended by
the parties, that subsequently, following the commencement of liti-
gation by third persons to block construction of a highway essen-
tial to the proposed shopping center and disagreements between
the lessor and the lessee, the lessor brought a suit in equity against
the lessee in which the lessee appealed from a decree in good faith
and not to frustrate the lessor's rights under the lease and a decree
after rescript was entered extending the lessor's time for perform-
ance during the pendency of the third persons' litigation, that
thereafter the lessor's efforts were directed to obtaining basic
changes in the lease rather than to performing it as written, that
construction of the store was not undertaken, and that after the
expiration of the time fixed in the decree after rescript the lessee
exercised a right under the lease to terminate it, it was held in
a subsequent suit brought by the lessor against the lessee that the

lessee was under no obligation to renegotiate the lease and had properly terminated it. [305-310, 312]

BILL IN EQUITY filed in the Superior Court on March 19, 1971.

The suit was heard by *Lynch*, J.

*Michael W. Albano*, pro se (*Edward M. Dangel* with him).

*Frederick S. Pillsbury* (*Charles W. Sullivan*, of New York, with him) for the defendant.

HALE, C.J.    This is a petition for declaratory judgment (G. L. c. 231A) which seeks a determination of the rights of the parties under a lease executed in 1964.    The plaintiff has appealed from a final decree which adjudged, among other things, that the lease in question had been effectively terminated.

The evidence is reported and there is a report of material facts.    The evidence is both oral and documentary.    Our duty is to examine the entire evidence and to decide the case according to our own judgment.    Findings of fact based wholly or partly upon oral testimony, however, will not be set aside unless they are plainly wrong.    *Berry* v. *Kyes*, 304 Mass. 56, 57-58 (1939).    We summarize the material facts found by the trial judge.

The plaintiff Albano, a real estate developer, acquired sixty-three acres of land in the Springfield area upon which he planned to erect a regional shopping center to be known as the Springfield Mall.    On April 28, 1964, Albano and Jordan Marsh entered into an indenture of lease (the lease) whereby Albano agreed to lease to Jordan Marsh for a term of thirty-five years a department store building to be erected by Albano on the site. The lease provided that the store was to be substantially completed by May 1, 1967.    The date of substantial completion is known as the "fixturing date," the date upon which the tenant may begin installing its fixtures and stocking its store with merchandise.    A store of the size contemplated here would usually be ready for fix-

turing approximately fourteen months after the commencement of construction. Such a store could be opened for business three to four months after the fixturing date.

Albano encountered difficulties in obtaining the financing required for the project; by March, 1966 (fourteen months prior to the contemplated fixturing date), he had not secured permanent or construction financing, had not secured other tenants for the shopping center as required under the lease, and did not have the necessary construction plans and contracts. After negotiations with Jordan Marsh, an amendment to the lease was executed on May 10, 1966. The amendment postponed the fixturing date to February 1, 1968. The amendment also required Albano to complete a store for Filene's, to the east of the Jordan Marsh store site, no later than the commencement of the term of the lease to Jordan Marsh. The management of Jordan Marsh felt that the addition of a Filene's store would help give the shopping center an advantage over anticipated competition from other shopping centers.

During the summer of 1966 Albano began to obtain certain financing and construction commitments. His application for a mortgage loan was approved. He entered into a construction agreement with a contractor, and his application for a construction loan was accepted on August 11, 1966. The construction financing arrangement required Albano to submit to the lender evidence of his agreements with Jordan Marsh, Filene's, and other prospective tenants concerning the commencement of construction of their respective stores. The arrangement also required Albano to begin drawing down the promised funds within sixty days following August 12, 1966.

By the fall of 1966 Albano had obtained several leases, but his efforts to negotiate a lease with Filene's during the above-described sixty-day period were unsuccessful. In September of 1966 he had been notified by Jordan

Marsh that it would insist upon literal compliance with the amended lease. In early October he requested an extension of time from the construction lender, explaining that the Filene's lease was being prepared but would not be available before the end of the sixty-day period. The lender refused to grant an extension, and subsequently cancelled his loan application. Albano never obtained an executed lease from Filene's.

Late in November, 1966, certain taxpayers and residents of Springfield brought proceedings in Hampden Superior Court seeking to block the construction of the Outer Belt Highway, an artery which all parties considered essential to the success of the proposed shopping center. Demurrers were sustained in each of these proceedings, but two cases were appealed to the Supreme Judicial Court. It was found that while such appeals were pending, "no construction lender would take any risks on financing the Center." Albano notified Jordan Marsh in December, 1966, that the pending proceedings (and certain other events) rendered it impossible for him to proceed with the construction plans; his position was that those factors constituted "unavoidable causes and delays" as defined in the lease, and therefore that he was entitled to an extension of time as provided for under the lease. Jordan Marsh responded that it did not agree with his position, and subsequently advised him again that it would look to strict compliance with the lease, including delivery of a substantially completed building by February 1, 1968, as agreed to in May, 1966.

In February, 1967, Albano amended his construction agreement; the guaranteed maximum cost of the project was now about ten per cent higher than the original figure set forth in the 1966 agreement. In March, 1967, he informed the parent company of Jordan Marsh that a new lender was willing to provide construction financing. He requested a three-month extension, explaining that construction could now be started and could be completed to meet a fixturing date of May 1, 1968. A representa-

tive of the parent company replied that Jordan Marsh
wanted a store ready for fixturing in February as speci-
fied in the lease 'as amended.

Albano then brought a bill in equity in Suffolk
Superior Court, seeking a determination of his right to
continue performance under the lease. On September 1,
1967, a decree was entered declaring that, under the
terms of the lease, time still remained for him to render
performance. Albano then wrote Jordan Marsh that he
had secured, among other things, permanent financing,
construction financing, and leases with other tenants; he
also stated that "[i]t is urgent that we proceed with the
Springfield Mall construction now." Jordan Marsh,
however, decided to appeal the Superior Court decision
to the Supreme Judicial Court. It was found that
"Jordan's decision to appeal . . . was based on competent
legal advice and was made in good faith and not in an
effort to frustrate Albano's rights under the lease."

During the fall of 1967 several prospective tenants
asked to be released from their leases. Some of these
tenants negotiated with a competing shopping center
located about four miles away. It was found that
"Jordan played no part in inducing these tenants to
leave." Late in the fall Albano surrendered his perma-
nent financing commitment.

On June 5, 1968, the opinions of the Supreme Judicial
Court in the taxpayers' appeals and in Jordan Marsh's
appeal were released. In the taxpayers' actions, the
decrees sustaining the demurrers were affirmed. *Porem-
ba* v. *Springfield*, 354 Mass. 432 (1968). *Omartian* v.
*Mayor of Springfield*, 354 Mass. 439 (1968). In Albano's
action against Jordan Marsh, the decree granting Albano
further time to perform was also affirmed. *Albano* v.
*Jordan Marsh Co.* 354 Mass. 445 (1968). On June 17,
1968, Albano wrote to Jordan Marsh asking whether
Jordan Marsh would proceed "on an equitable basis."
Jordan Marsh responded that it was prepared to live up
to the obligations of the lease.

In the *Albano* v. *Jordan Marsh Co.* case, a final decree after rescript was entered in Suffolk Superior Court on June 25, 1968, which provided that Albano was entitled to an extension of time equal to that of the pendency of the taxpayers' suits. The judge found that that period of time was one year, seven months and four days, and that the effect of the final decree was to postpone the fixturing date from February 1, 1968, to September 5, 1969.

Jordan Marsh informed Albano on July 29, 1968, that timely performance under the lease as modified and as judicially interpreted was then or would soon be in order. On August 8, Albano responded, reserving all of his rights. On September 10, Jordan Marsh indicated its readiness to confer with Albano to discuss methods to assure performance of the lease obligation, as opposed to renegotiation of lease terms. On October 21, 1968, Albano wrote that he was holding Jordan Marsh responsible, and that he was presently forced to salvage what he could as to the land. It was found that "after the entry of the Final Decree After Rescript, Albano did not attempt to perform but, rather, sought to negotiate new terms on the lease with Jordan, seeking either an increase in rent, an agreement that Jordan would construct its own store . . . or some other basic change in the lease. It was his position that Jordan should 'become reasonable' about the transaction and, in effect, rewrite the lease with some new terms more favorable to him."

Construction of the building was not undertaken. On December 24, 1969, Jordan Marsh notified Albano of his failure to perform as required by the lease as modified and as interpreted, and of its intention to exercise its right of termination under the lease. Albano responded, accusing Jordan Marsh of breaching the lease. On January 24, 1970, Jordan Marsh gave Albano written notice of termination. Albano brought the present suit on March 19, 1971.

The judge ruled that Jordan Marsh was under no legal duty to proceed "on an equitable basis" as Albano had requested and was under no obligation to renegotiate the terms of the lease. He ruled that the only duty owed by Jordan Marsh was to perform its obligations under the lease as amended and as judicially construed, that the time for completion of performance had expired, and that Jordan Marsh had properly terminated the lease. He further ruled that Albano was not entitled to any damages, as there was "no liability to Albano on the part of Jordan for breach of any of the provisions of the Lease"; that Jordan Marsh was not entitled to any damages in this action; and that even if Jordan Marsh had breached its obligations under the lease, it would be inequitable to order specific performance. These rulings were incorporated in the final decree, from which Albano has appealed.[1]

Many of the legal issues which the plaintiff's brief and reply brief purport to raise and discuss are premised on our finding facts either not found or contrary to those found by the trial judge. Extensive portions of those briefs are devoted to lengthy recitations of certain evidence, which, if considered separately or out of context, could tend to support findings of fact more favorable to the plaintiff's position.

Much of the testimony pertaining to the disputed findings was confusing or conflicting. Faced with such testimony, the trial judge was required to resolve the apparent inconsistencies, to determine the credibility of the various witnesses, and to make findings of fact

---

[1] The final decree also incorporated the judge's findings that Jordan Marsh's decision to appeal from the 1967 Suffolk Superior Court decree was made in good faith; that Jordan Marsh played no part either in inducing other prospective tenants to seek releases from their leases or in frustrating Albano's efforts to negotiate a lease with Filene's; and that Albano, by failing to deliver a substantially completed building to Jordan Marsh, did not perform his duties and obligations under the lease.

consistent with his determination of the credible testimony. It appears to us that the judge performed this function capably. His findings demonstrate that he carefully analyzed the several dozen exhibits and the several hundred pages of testimony, and that he distilled from this welter of evidence a well organized set of findings which depicts a complicated sequence of events with substantial clarity. We reiterate that those findings of the judge which are based in whole or in part upon oral testimony will not be set aside unless plainly wrong. *Barnum v. Fay,* 320 Mass. 177, 180 (1946). Having carefully examined all of the evidence, we are satisfied that no finding material to the decree is plainly wrong.[2]

The plaintiff challenges an evidentiary ruling made at the close of the trial, wherein the judge allowed a motion to strike certain testimony. We think the ruling was proper. The transcript indicates that the testimony in question had been admitted only on the condition that subsequent evidence would be offered to establish its relevance and materiality. No such evidence was offered. The plaintiff's reliance on *Schleifer v. Worcester No. Sav. Inst.* 310 Mass. 110 (1941), is misplaced. It is elementary law that testimony admitted conditionally may be struck if the condition is not satisfied. McCormick, Evidence (2d ed.) § 58. Leach and Liacos, Handbook of Massachusetts Evidence, 320. See *Muldoon v. West End Chevrolet, Inc.* 338 Mass. 91, 98 (1958).

The finding that Jordan Marsh's determination to appeal from the 1967 Suffolk Superior Court decision was made in good faith, while lacking direct support in the record, was not erroneous. The very nature of the case

---

[2] The statement contained in paragraph 33 of the findings "that United [Housing Corporation] was an exclusive agent retained for a brokerage fee to search for and find financing for Albano" is not supported by the evidence. It appears that United's services were never retained by Albano. The judge's finding in paragraph 10 was also inaccurate. We are of the opinion, however, that neither of these findings was material to the final decree.

(*Albano* v. *Jordan Marsh Co.* 354 Mass. 445 [1968]) demonstrates that a genuine question of law was involved and justifies the inference of good faith.

The plaintiff also attacks the finding that, after the final decree after rescript entered on June 25, 1968, the plaintiff was entitled to an extension of one year, seven months, and four days; the plaintiff submits that the computation of the duration of that period was erroneous, on the ground that one of the taxpayers' suits (a certiorari action from which no appeal was taken) was not marked "dismissed" until June 3, 1971 (see Rule 85 of the Superior Court [1954]). The plaintiff does not question the judge's ruling that the certiorari case had gone to judgment in January, 1967. As no appeal or other action was ever taken on that case, we think the judge correctly ruled that the certiorari action was no longer "pending" as of June 25, 1968, and that, under those circumstances, the date of dismissal was not determinative of the pendency of the action.

We are in complete agreement with the conclusions of the trial judge that, in essence, Albano's efforts after 1968 were geared toward effecting a new lease with Jordan Marsh, and that there was no basis for the court to substitute a new lease for the old one and to order specific performance under such an arrangement.

*Decree affirmed.*