MICHAEL W. ALBANO *vs.* JORDAN MARSH COMPANY.

Hampden.     March 15, 1977. — April 29, 1977.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Res Judicata.    Collateral Estoppel.*

Where the issues involved in a tort action for malicious interference with the plaintiff's business relationships were raised, litigated and carefully deliberated in a prior action between the same parties which sought a declaration of the rights of the parties under a lease, the defendant's motion for summary judgment in the tort action on the ground of res judicata was properly allowed. [279-281]

CONTRACT OR TORT.     Writ in the Superior Court dated December 5, 1968.

A motion for summary judgment was heard by *Greaney*, J.

*Edward M. Dangel* for the plaintiff.
*Frederick S. Pillsbury* for the defendant.

HALE, C.J.     The plaintiff appeals from the allowance of the defendant's motion for summary judgment on the ground of estoppel by judgment.

There has been much litigation between the parties, all of it based on the efforts of the plaintiff to develop a shopping center in the Springfield area. A more detailed account of those efforts may be found in *Albano* v. *Jordan Marsh Co.* 2 Mass. App. Ct. 304, 305-310 (1974) (herein-

after *Albano I*), further appellate review denied, 365 Mass. 636 (1974). See also *Albano* v. *Jordan Marsh Co.* 354 Mass. 445 (1968); *Albano* v. *Jordan Marsh Co.* 367 Mass. 651 (1975), (hereinafter *Albano II*).

The sole surviving count in the present action is in tort, alleging malicious interference with the plaintiff's business relationships; in substance the plaintiff alleges that the defendant (which was to be the prime, or "anchor," tenant in the proposed shopping center) wrongfully induced other tenants (smaller retail stores) to break their leases with the plaintiff. The present action was begun in 1968, and thus actually predates *Albano I*, a "petition for declaratory judgment" filed in 1971, tried in 1973, and affirmed on appeal in 1974. After the entry of the 1973 decree in the Superior Court in *Albano I* the defendant was permitted to amend its answer in the present action to assert the defense of res judicata. Because *Albano I* had been appealed, however, the present action was placed on the list of nontriable cases until resolution of that appeal. The plaintiff's unsuccessful efforts to obtain review of that interlocutory disposition of the present action are chronicled in *Albano II, supra*.

On March 12, 1976, the defendant filed a motion for summary judgment in the present action on the ground of "res judicata or collateral estoppel." The plaintiff filed an affidavit in opposition thereto. The judge allowed the motion and filed a statement of "Conclusions of Law" pertinent to his decision. In short, he ruled that the facts essential to the maintenance of the present action in tort had been found adversely to the plaintiff in *Albano I*.[1]

---

[1] The judge stated: "To the extent that his tort action relies on an allegation that Jordan acted wrongfully and maliciously in refusing to grant an extension of time, the allegation fails since the declaratory judgment decree expressly found that Jordan acted at all times in good faith. To the extent that Albano's difficulties were caused by the suit over the Highway, caused inferentially by Jordan, the allegation fails since the declaratory judgment action found that Jordan played no part in instigating this litigation. To the extent that the tort action depends on Albano's assertion that Jordan caused the other tenants to abandon their leases, the action fails since the prior action has

Albano *v.* Jordan Marsh Co.

The plaintiff argues that the defense of res judicata is not applicable to the present action because the cause of action involved here — unlawful interference with contractual relations — is distinct from that in *Albano I,* which sought a determination of the rights of Albano and Jordan Marsh under a lease. Thus, he argues, it makes no difference that certain facts may have been found in *Albano I* which are relevant to the present action (see n.1, *supra*), because those findings were not essential to the subject matter of *Albano I* and hence are not "adjudicated" facts for res judicata purposes. Cf. *Cambria* v. *Jeffery,* 307 Mass. 49, 50 (1940); *Wayland* v. *Lee,* 325 Mass. 637, 641 (1950).

In our opinion, however, the method of analysis propounded by the plaintiff is not, under modern authority, the correct one. The question is not whether a particular finding was "essential" to the judgment in the prior action, but rather whether that finding has been "the product of full litigation and careful deliberation." *Home Owners Fed. Sav. & Loan Assn.* v. *Northwestern Fire & Marine Ins. Co.* 354 Mass. 448, 455 (1968). See Restatement (Second) of Judgments § 68, Reporter's Note to comment h, at 167 (Tent. Draft No. 1, 1973). Thus, the fact that the two cases involve the application of different principles of law (see *Sandler* v. *Silk,* 292 Mass. 493, 498-500 (1935); *Boylston* v. *McGrath,* 348 Mass. 640, 643-644 [1965]) is not decisive. The ordinarily conclusive effect of a judgment in a former action cannot be circumvented merely by characterizing a second action differently from the first. "Two actions are not necessarily for different causes of action simply because the theory of the second would not have

found that Jordan played no part in causing the other tenants to cancel their leases. To the extent that the action rests on Jordan's alleged interference with the lease with Filene's, the action fails since it has been found that Jordan played no part in Filene's abandoning its lease. To the extent that the action rests on the allegation that Jordan 'let it be known throughout the shopping center industry that it would not grant an extension,' the action fails, in my opinion, because of the finding in the prior suit that Jordan acted throughout in good faith. I thus can see no basis for the maintenance of the tort action on any of the assertions pleaded therein."

been open under the pleadings in the first." *Mackintosh*
v. *Chambers,* 285 Mass. 594, 597 (1934). Compare *Siegel*
v. *Knott,* 318 Mass. 257 (1945); *Wishnewsky* v. *Saugus,*
325 Mass. 191, 195 (1950); *Forman* v. *Wolfson,* 327 Mass.
341, cert. den. 342 U. S. 888 (1951); *Ratner* v. *Rockwood
Sprinkler Co.* 340 Mass. 773 (1960); *Dwight* v. *Dwight,*
371 Mass. 424, 428-430 (1976).

It is necessary, then, to look beyond the captions of the
pleadings and examine the entire record of the first case
in order to determine whether the issues involved in the
present action were actually raised, litigated, and carefully
deliberated in the first case. *Home Owners Fed. Sav. &
Loan Assn., supra.* Restatement (Second) of Judgments
§ 76 and Comments b and c (Tent. Draft No. 3, 1976). We
conclude (as did the judge below) that they were. An
examination of the pleadings in *Albano I*[2] discloses that
the plaintiff specifically alleged that "[a]s a result of [a]
... course of action by [Jordan Marsh] ... other tenants
which [Albano] ... had secured began to withdraw from
the project." In its answer the defendant specifically al-
leged that Albano had "disabled himself from performing
[under the lease] by allowing the cancellation of essential
leases which he had obtained..." and that "as a result of
his own actions [Albano] ... rendered his performance im-
possible ...." Those respective allegations, we think, served
to raise in *Albano I* the precise issue now involved. Thus,
the court's finding in *Albano I* that "Jordan played no
part in inducing these tenants to leave" (2 Mass. App. Ct.
at 308), incorporated in the final decree (*id.* at 310, n.1),
and affirmed by this court on appeal (*id.* at 311 & n.2), is
"conclusive" (Restatement [Second] of Judgments § 76,
*supra*) for the purposes of res judicata and collateral es-
toppel.[3] The same conclusive effect must be given to the

---

[2] The record and briefs on appeal in *Albano I,* including the plead-
ings, findings and final decree, were introduced as an exhibit in the
present action.

[3] No question appears to have been raised in the lower court or on
appeal that any of the several tenants (all named) in the declaration

other findings set forth in n.1, *supra.* We see nothing in the plaintiff's affidavit in opposition to the motion for summary judgment in the present action that establishes with requisite specificity the existence of any fact not already litigated.

We attach no special significance to the fact that the primary object of *Albano I* may have been to establish the rights of Albano and Jordan Marsh under their lease; nor do we attach significance to the apparent agreement of the parties to postpone trial on the present action until the resolution of *Albano I*. As we see it, the plaintiff saw fit to open up the issues involved in the present action in *Albano I* and to litigate them at trial and on the earlier appeal. He cannot now insist that those issues should be relitigated because they were somehow not central to the relief sought in *Albano I*. If the plaintiff had had that concern during the course of *Albano I*, he could have filed appropriate motions to remove those issues from *Albano I*. Such a course of action would have been especially appropriate because of the unusual circumstance that the present action (i.e., the "second" action for res judicata purposes) had been filed and was actually pending at the time *Albano I* (the "first" action for res judicata purposes) was commenced. Thus the precise cause of action on which the plaintiff intended to rely in his "second" action had already been set forth.

The long and tortuous course of litigation between the parties illustrates the interests to be served by avoiding piecemeal litigation. See *Albano II* at 654-655. See also *Grunberg* v. *Louison,* 343 Mass. 729 (1962). The lower court acted wisely in permitting the defendant to amend its answer to assert the defense of res judicata (see *Willett* v. *Webster,* 337 Mass. 98, 100 [1958]) and properly in allowing the motion for summary judgment based on that ground.

*Judgment affirmed.*

in the present action are different from the "tenants" who were referred to (but not specifically named) in *Albano I*.