# United States Court of Appeals
## For the First Circuit

No. 08-1255

ANDREW ROBINSON INTERNATIONAL, INC., ET AL.,

Plaintiffs, Appellants,

v.

HARTFORD FIRE INSURANCE COMPANY,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Baldock,* and Selya,

Circuit Judges.

Jack P. Milgram, with whom Law Offices of Jack P. Milgram was on brief, for appellants.
Felicia H. Ellsworth, with whom Mark C. Fleming and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for appellee.

November 10, 2008

_____

*Of the Tenth Circuit, sitting by designation.

**SELYA**, **Circuit Judge**.  This is a diversity case, and the parties agree that Massachusetts law controls. The hostilities initially took the form of a garden-variety insurance dispute — but the case has now morphed into an interesting question about the preclusive effect (if any) of a declaratory judgment on a subsequent action for damages arising out of the same nucleus of operative facts.  The district court determined that a final judgment in the original declaratory action barred the maintenance of the subsequent suit.  After careful consideration, we reverse.

## I.  BACKGROUND

We glean the facts from the state court's rescript in the original declaratory judgment action and the plaintiffs' complaint in the subsequent suit.

The plaintiffs, appellants in this court, are a quartet of affiliated companies: Andrew Robinson International, Inc., Andrew Robinson International Financial Services, Inc., Andrew Robinson International Insurance Brokerage, Inc., and Andrew Robinson International Risk Management Consultants, Inc. (collectively, Robinson).  The four corporations shared an office condominium at 165 Friend St., Boston, Massachusetts.  On April 25, 2003, the occupant of a neighboring unit negligently discharged lead-laden dust into Robinson's unit.  The incident proved costly: Robinson's premises were badly damaged and Robinson was forced to relocate until the clean-up was complete.

In due course, Robinson filed a first-party claim against its insurer, Hartford Fire Insurance Co. Hartford denied the claim, asserting that the dust constituted a pollutant under its policy (which, subject to certain exceptions, excluded coverage "for loss or damage caused by or resulting from the discharge, dispersal, seepage, migration, release, or escape" of pollutants).[1] Robinson responded by demanding an affirmation of coverage. Hartford demurred.

At that juncture, Robinson repaired to the state superior court in search of a declaration of the parties' rights and liabilities under the insurance policy. Following some preliminary skirmishing (not relevant here), the court, acting on cross-motions for summary judgment, concluded that lead-laden dust released within a commercial building did not constitute pollution and, therefore, did not trigger the policy exclusion. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co. (Robinson I), No. 03-1353, 2006 WL 1537382, at *13 (Mass. Super. Ct. Feb. 6, 2006). Hartford allowed the declaratory judgment to become final and paid Robinson's first-party claim.

Approximately eight months later, the other shoe dropped: Robinson again sued Hartford in the state court. This time, Robinson alleged that Hartford's stonewalling constituted an unfair

_____

[1] The policy defined a pollutant as "any solid, liquid, gaseous, or thermal irritant or containment, including smoke, vapor, soot, fumes, acids, alkalis, chemicals, and waste."

-3-

and deceptive trade practice in violation of Mass. Gen. Laws ch. 93A, § 11, and prayed for treble damages and attorneys' fees. Hartford removed the case to the federal district court based on diversity of citizenship and the existence of a controversy in the requisite amount. See 28 U.S.C. §§ 1332(a), 1441.

Hartford's next step was to move for dismissal under Federal Rule of Civil Procedure 12(b)(6) on the ground that the chapter 93A suit was foreclosed by principles of res judicata. Robinson opposed the motion, arguing among other things that the Massachusetts courts would not give preclusive effect as to claims not actually litigated in a previous declaratory judgment action.[2] The district court sided with Hartford and dismissed the action. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co. (Robinson II), 533 F. Supp. 2d 218, 222 (D. Mass. 2008). This timely appeal followed.

## II.  PERTINENT LEGAL PRINCIPLES

We begin with a précis of some pertinent legal principles.

Our standard of review is familiar: we evaluate a dismissal for failure to state a claim de novo, accepting all well-pleaded facts delineated in the complaint and drawing all

---

[2] Neither side asked the district court to certify the controlling question to the Supreme Judicial Court. See S.J.C. Rule 1:03. On appeal, the parties have continued to eschew any such request.

reasonable inferences therefrom in favor of the party contesting dismissal. Palmer v. Champion Mortg., 465 F.3d 24, 27 (1st Cir. 2006); Jorge v. Rumsfeld, 404 F.3d 556, 559 (1st Cir. 2005). The motion will be granted unless the facts, evaluated in that plaintiff-friendly manner, contain enough meat to support a reasonable expectation that an actionable claim may exist. Bell Atl. Corp. v. Twombley, 127 S. Ct. 1955, 1965 (2007); Morales-Tañón v. P.R. Elec. Power Auth., 524 F.3d 15, 18 (1st Cir. 2008).

In passing upon a motion to dismiss for failure to state a claim, the reviewing court's focus on the well-pleaded facts is more expansive than might first be thought. Within that rubric, the court may consider matters fairly incorporated within the complaint and matters susceptible of judicial notice. In re Colonial Mortg. Bankers Corp., 324 F.3d 12, 14 (1st Cir. 2003). Thus, where the motion to dismiss is premised on a defense of res judicata — as is true in the case at hand — the court may take into account the record in the original action. See, e.g., R.G. Fin. Corp. v. Vergara-Núñez, 446 F.3d 178, 183-84 (1st Cir. 2006); Boateng v. InterAm. Univ., 210 F.3d 56, 60 (1st Cir. 2000).

The fact that this is a diversity case adds another dimension to our task. A federal court sitting in diversity must apply state law to determine the preclusive effect of an earlier state court judgment. Kathios v. Gen. Motors Corp., 862 F.2d 944, 946 (1st Cir. 1988). In the first instance, this means that the

federal court looks to pronouncements of the highest court of the state.  Id.  When that court has not spoken directly to an issue, the federal court must make an informed prophecy as to the state court's likely stance.  See Blinzler v. Marriott Int'l. Inc., 81 F.3d 1148, 1151 (1st Cir. 1996).

In undertaking this inquiry, the federal court may draw upon a variety of sources that may reasonably be thought to influence the state court's decisional calculus.  While these sources are not arranged in any rigid hierarchy, the federal court as a general matter will start by inspecting analogous decisions of the state's highest court; then consider decisions of the lower courts of that state; then examine the precedents in other jurisdictions; then survey the collected wisdom found in learned treatises; and finally, mull any relevant policy rationales.  See, e.g., Blinzler, 81 F.3d at 1151; Ryan v. Royal Ins. Co., 916 F.2d 731, 734-35 (1st Cir. 1990).  In conducting this tamisage, the federal court should pay particular attention to those sources that the state's highest court has endorsed in the past and to public policy considerations mentioned approvingly in that court's decisions.  See Gibson v. City of Cranston, 37 F.3d 731, 736 (1st Cir. 1994).  In the final analysis, the federal court's objective is not to choose the legal path that it deems best but, rather, to predict what path the state court would most likely travel.  See Kathios, 862 F.2d at 946.

**III. ANALYSIS**

Massachusetts recognizes two distinct types of preclusion arising out of the maintenance of prior litigation: res judicata (claim preclusion) and collateral estoppel (issue preclusion). See Kobrin v. Bd. of Regist. in Med., 832 N.E.2d 628, 634 (Mass. 2005). Both the parties and the district court have analyzed this case in terms of res judicata. We follow their lead.

Res judicata "makes a valid final judgment conclusive on the parties . . . and prevents relitigation of all matters that were or could have been adjudicated in the action." Id. This doctrine is sometimes known as "merger and bar," nomenclature that emphasizes the doctrine's role in guarding against claim-splitting. See Restatement (Second) of Judgments §§ 18, 19, 24 (1982).

The operation of res judicata requires the presence of three elements: "(1) the identity or privity of the parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final judgment on the merits." Kobrin, 832 N.E.2d at 634; see McDonough v. City of Quincy, 452 F.3d 8, 16 (1st Cir. 2006). Here, the parties are the same and the first action unarguably ended in a final judgment. That leaves the second element; Robinson's opening gambit is to suggest that the two actions it brought against Hartford fail to present the requisite identity of causes of action. We test that thesis.

Massachusetts deems causes of action identical for claim preclusion purposes if they "grow[] out of the same transaction, act, or agreement, and seek[] redress for the same wrong." Brunson v. Wall, 541 N.E.2d 338, 341 n.9 (Mass. 1989) (quoting Mackintosh v. Chambers, 190 N.E. 38, 39 (Mass. 1934)). Viewed against this backdrop, Robinson's premise is that because a violation of chapter 93A creates "an action independent from the [insurance] contract," Swartz v. Travelers Indem. Co., 740 N.E.2d 1039, 1043 (Mass. App. Ct. 2001), an action based on chapter 93A addresses a separate "wrong."

Massachusetts law is inhospitable to this premise. Discrete theories of liability may constitute identical causes of action for claim preclusion purposes if they are based on the same nucleus of operative facts. See Fassas v. First Bank & Trust Co., 233 N.E.2d 924, 925 (Mass. 1968) (explaining that "[t]he statement of a different form of liability is not a different cause of action, provided it grows out of the same transaction") (citation and internal quotation marks omitted); see also Isaac v. Schwartz, 706 F.2d 15, 17 (1st Cir. 1983) (interpreting Massachusetts law to hold that "new legal theories, embodied in different statutes and different common law doctrines," are still identical causes of action for claim preclusion purposes).

A review of the complaints in Robinson I and Robinson II, respectively, confirms that both actions arise from the same

-8-

transaction.  In the former — the declaratory action — Robinson complained that Hartford wrongfully denied coverage for its first-party insurance claim.  In the latter — the chapter 93A action — Robinson complained that the same denial of coverage, undertaken "willfully and in bad faith," amounted to an unfair trade practice. It is thus apparent that both suits arose out of the same underlying transaction.  Consequently, the stated causes of action are identical within the meaning of the res judicata doctrine.

This conclusion means that the customary ingredients for the application of res judicata are present.  Robinson concedes that, under those principles, a final judgment ordinarily bars litigation of unmade claims arising out of the same transaction. The question, however, is whether some special rule obtains here.

Robinson proposes such a special rule.  It asseverates that normal principles of claim preclusion will not operate when the original action was for declaratory relief.  The linchpin of this asseveration is section 33 of the Restatement (Second) of Judgments, which states that "[a] valid and final judgment in an action brought to declare rights or other legal relations of the parties is conclusive in a subsequent action between them as to the matters declared."  Under this prescription, "[a] plaintiff who wins a declaratory judgment may go on to seek further relief, even in an action on the same claim which prompted the action for a declaratory judgment."  Id. cmt. c.  "This further relief may

include damages which had accrued at the time the declaratory relief was sought; it is irrelevant that the further relief could have been requested initially." Id.

The serial Restatements are much-respected works. Nevertheless, the question is not one of doctrine in the abstract but, rather, whether the highest court of Massachusetts — the Supreme Judicial Court (SJC) — would follow the rule of the Second Restatement; that is, whether the SJC would hold that a valid and final judgment in an action brought to declare rights precludes the maintenance of a subsequent action between the same parties arising out of the same transaction and involving an issue that could have been, but was not, actually litigated in the former action.

The district court concluded that we had answered this question in Pasterczyk v. Fair, 819 F.2d 12 (1st Cir. 1987). The court read Pasterczyk for the proposition that, notwithstanding the declaratory nature of an original action, the usual rules of claim preclusion apply. See Robinson II, 533 F. Supp. 2d at 221. We think that the district court read Pasterczyk too aggressively.

In that case, the plaintiff had filed a Massachusetts state court action seeking recalculation of his sentence. 819 at 13. After obtaining a declaration that he was entitled to credit for time served in other states, the plaintiff won his release. Id. He then sued under 42 U.S.C. § 1983 for damages in consequence of his overlong incarceration. To escape a res judicata effect, he

-10-

asserted that his first action was one for habeas corpus relief, in which he argued that he could not have advanced a claim for damages.  See id. at 14; see also Restatement (Second) of Judgments § 26(1)(c) (providing for a "competency" exception to claim preclusion when a jurisdictional obstacle precludes plaintiff from raising an issue in the first action).

We concluded that the plaintiff had mischaracterized the first action: it was an action for declaratory judgment, not one for habeas corpus.  819 F.2d at 15. Thus, the plaintiff's argument failed because the exception was "inapplicable" as Pasterczyk could have sought damages in the initial action.  Id.  No question was either asked or answered about the scope of claim preclusion following the adjudication of a declaratory action.  It follows that Pasterczyk does not control here.

We find equally inconclusive our decision in Mulrain v. Board of Selectmen of Town of Leicester, 944 F.2d 23 (1st Cir. 1991).  At the end of the day, the panel in that case refused directly to consider claim preclusion in the declaratory judgment context.  See id. at 25-26.  The issue that Robinson advances on appeal is, therefore, an open issue in this circuit.[3]

---

[3] Our recent decision in Herman v. Meiselman, 541 F.3d 59 (1st Cir. 2008), does not materially advance this inquiry.  The preclusive judgment in Herman was not a declaratory judgment but a consent decree awarding among other things money damages.  See id. at 62 n.5.

-11-

With that introduction, we turn to the decisions of the Massachusetts courts. Although the SJC has never explicitly adopted section 33 of the Second Restatement, we start with a rebuttable presumption that it would be inclined to follow that course. We embrace that presumption for two reasons.

First, we have noted, over and over again, that Massachusetts courts apply res judicata in a thoroughly conventional way. See, e.g., Mulrain, 944 F.2d at 25; Capraro v. Tilcon Gammino, Inc., 751 F.2d 56, 58 (1st Cir. 1985); Casagrande v. Agoritsas, 748 F.2d 47, 48 (1st Cir. 1984); Isaac, 706 F.2d at 16. As a corollary of that proposition, we think it wholly appropriate to look, at least initially, to the Restatement as an accurate barometer of unarticulated Massachusetts law. See, e.g., Pasterczyk, 819 F.2d at 14 ("Finding no Massachusetts case on point, we turn . . . to the Restatement."); Isaac, 706 F.2d at 16-17 (applying that principle). We see nothing in the situation at hand that would suggest the slightest reason for abandoning this course.

Second, although no reported Massachusetts case explicitly adopts section 33 of the Second Restatement, at least four cases have cited approvingly to some incarnation of that section. Two of these are decisions of the SJC. The list follows.

When defining the term "binding" in an unrelated statute, the SJC counted section 33's direct lineal ancestor, section 77 of

the first Restatement of Judgments (1942),[4] as persuasive evidence. Meunier's Case, 66 N.E.2d 198, 201 (Mass. 1946). In another case, the SJC looked to section 77 of the first Restatement as authority for the proposition that declaratory judgments have binding force and effect. Weingartner v. Town of N. Wales, 101 N.E.2d 132, 136 (Mass. 1951). Interestingly, the Weingartner court cited a comment stating that "[t]he effect of a declaratory judgment in subsequent controversies between the parties depends upon the scope of the declaration . . . . [A]s to matters not declared . . . the parties are not so precluded." Restatement of Judgments § 77 cmt. b; see 101 N.E.2d at 132. We regard that statement as highly suggestive (if only by negative implication).

Two opinions emanating from the state's intermediate appellate court also have exhibited a readiness to look to a corresponding provision contained in tentative drafts of the transitional Restatement. See Boyd v. Jamaica Plain Co-op Bank, 386 N.E.2d 775, 779 (Mass. App. Ct. 1979); Albano v. Jordan Marsh Co., 362 N.E.2d 219, 221 (Mass. App. Ct. 1977). While decisions of a state's intermediate appellate court are not binding on a federal

---

[4] Section 77 states:

Where an action is brought to obtain a declaration of the rights or other legal relations of the parties to the action, whether or not further relief is or could be prayed, a final and valid judgment declaring such rights or other relations is binding between the parties in subsequent actions.

-13-

court sitting in diversity, such opinions are entitled to some weight.[5]  See West v. AT&T, 311 U.S. 223, 237 (1940); CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 962 F.2d 77, 91 (1st Cir. 1992).

In the aggregate, these Massachusetts cases strongly suggest that when faced with the question that is now before us, the SJC will adopt the articulation of claim preclusion principles limned in section 33 of the Second Restatement.

In an effort to weaken the force of this reasoning, Hartford's able counsel marshals a number of other Massachusetts cases.  In the end, this effort proves fruitless.

Hartford's first proffer consists of cases holding that a final decree in a declaratory judgment action bars a subsequent action for declaratory relief arising out of the same transaction.[6]

---

[5] Hartford points to Boyd as a case applying conventional principles of claim preclusion to bar causes of action that could have been (but were not) brought in a prior declaratory action. While Boyd is far from a model of clarity, it relied upon a tentative draft of the transitional Restatement (now section 33) to find that the claims in the second action were barred as matters actually declared in the first action.  368 N.E.2d at 781. Anything else in the opinion is dictum.  At a bare minimum this somewhat schizophrenic decision suggests that section 33 of the Second Restatement applies except when both the original and subsequent actions are for declaratory judgment.  That is not the situation here.

[6] In this regard, Hartford's citation to Fassas, 233 N.E.2d at 924, is inapposite.  In Fassas, the prior action sought primarily injunctive relief and thus did not implicate the special rule for claim preclusion with which we are concerned.  See Restatement (Second) of Judgments § 33 cmt. d (explaining that actions dominated by claims for coercive relief should not be construed as

-14-

See, e.g., Fassas, 233 N.E.2d at 925; Sadler v. Indus. Trust Co., 97 N.E.2d 169, 170-71 (Mass. 1951). That line of cases provides Hartford no succor.

Sadler illustrates the point. That case involved two appeals to the SJC from orders dismissing similar declaratory judgment actions brought consecutively by a single plaintiff. See 97 N.E.2d at 170. The SJC held that the earlier declaratory judgment action was res judicata as to matters actually litigated in that action. Id. at 171. That ruling tracks the prescription of section 33.

Hartford's next reference is to a pair of unpublished decisions. The first is Lin v. Cahaly, No. 307493, 2005 WL 1844619 (Mass. Land Ct. Aug. 5, 2005), in which the court was confronted with an argument that claims for trespass and contract damages were precluded by an earlier suit to quiet title. The court dismissed the case for want of jurisdiction. Id. at *2. The judge, in dictum and without meaningful analysis, gratuitously rejected a declaratory judgment exception to the usual rules of claim preclusion. See id. at *3. The second case in this set, Gleed v. Donaldson, Lufkin & Jenrette, No. 93-12202, 1993 WL 543204, at *1 (D. Mass. Dec. 20, 1993), is likewise bereft of any analysis. Neither decision has any precedential force.

declaratory judgment actions for purposes of section 33 merely because the complaint may contain an incidental prayer for declaratory relief).

That ends our safari through Massachusetts case law. While not conclusive, the drift of these cases strengthens our initial intuition that the SJC would likely apply section 33 of the Second Restatement in this case. After all, Massachusetts courts generally follow the Restatement; those courts have cited earlier versions of this rule with approbation; and they have recognized that declaratory judgment actions evoke special claim preclusion principles. What remains, however, is to consult a broader spectrum of authorities.

A canvass of the decisions in other jurisdictions is instructive. The vast majority of states that have addressed this problem unapologetically apply a special rule of claim preclusion, consistent with that of section 33 of the Second Restatement, in the declaratory judgment context. Many of these courts have cited explicitly to some edition of the Restatement. See, e.g., Jackinsky v. Jackinsky, 894 P.2d 650, 656 (Alaska 1995); Aerojet-Gen. Corp. v. Am. Excess Ins. Co., 117 Cal. Rptr. 2d 427, 441-42 (Cal Ct. App. 2002); Eason v. Bd. of County Comm'rs, 961 P.2d 537, 540 (Colo Ct. App. 1997); Salvatore v. Ohio Cas. Ins. Co., No. CV990588345S, 2001 WL 823265, at *2 (Conn. Super. Ct. June 18, 2001); N. Shore Realty Corp. v. Gallaher, 99 So. 2d 255, 257 (Fla. Dist. Ct. App. 1957); Bankers & Shippers Ins. Co. v. Electro Enters., Inc., 415 A.2d 278, 285-86 (Md. 1980); Ganaway v. Shelter Mut. Ins. Co., 795 S.W.2d 554, 562 (Mo. Ct. App. 1990); Radkay v.

Confalone, 575 A.2d 355, 357-58 (N.H. 1990); Donnelly v. United Fruit Co., 183 A.2d 415, 419 (N.J. Super. Ct. App. Div. 1962); Principal Mut. Life Ins. Co. v. Straus, 863 P.2d 447, 451 (N.M. 1993); State ex rel. Shemo v. Mayfield Heights, 765 N.E.2d 345, 355 (Ohio 2002); Carver v. Heikkila, 465 N.W.2d 183, 186 (S.D. 1991); Martin v. Martin, Martin & Richards, Inc., 989 S.W.2d 357, 359 (Tex. 1998). Several states have used similar reasoning and adopted essentially the same rule, but without mentioning the Restatement. See, e.g., Cooke v. Gaidry, 218 S.W.2d 960, 962 (Ky. 1949); Warwick v. Pearl River Valley Water Supply Dist., 271 So. 2d 94, 96 (Miss. 1972); In re Cox, 388 S.E.2d 199, 201 (N.C. Ct. App. 1990); Okla. Alcoholic Bev. Control Bd. v. Cent. Liquor Co., 421 P.2d 244, 247 (Okla. 1966); Robison v. Asbill, 492 S.E.2d 400, 401 (S.C. Ct. App. 1997); Klaus v. Vander Heyden, 316 N.W.2d 664, 672 (Wis. 1982). In addition, a number of federal courts, applying state law, have adopted the Restatement's approach. See, e.g., Stericycle, Inc. v. City of Delavan, 120 F.3d 657, 659 (7th Cir. 1997) (applying Wisconsin law); Harborside Refrig. Servs., Inc. v. Vogel, 959 F.2d 368, 373 (2d Cir. 1992) (explaining that "both federal and New York law recognize the declaratory judgment exception articulated in the Restatement"); Cimasi v. City of Fenton, 838 F.2d 298, 299 (8th Cir. 1988) (applying Missouri law); Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls, 970 F. Supp. 1289, 1303 (N.D. Ohio 1997) (applying Ohio law); Umhey v. County of Orange, 957 F. Supp. 525,

-17-

528 (S.D.N.Y. 1997) (applying New York law). Last — but not least — a myriad of federal courts have opined that federal common law embraces the rule. See, e.g., Empire Fire & Marine Ins. Co. v. J. Transp., Inc., 880 F.2d 1291, 1296 (11th Cir. 1989); Smith v. City of Chicago, 820 F.2d 916, 919 (7th Cir. 1987); Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc., 575 F.2d 530, 536-37 (5th Cir. 1978); Lube 495, Inc. v. Jiffy Lube, 813 F. Supp. 100, 111-12 (D. Mass. 1993); Horn & Hardart Co. v. Nat'l R.R. Pass. Corp., 659 F. Supp. 1258, 1265 (D.D.C. 1987); In re Wash. Pub. Power Supply Sys Sec. Litig., 623 F. Supp. 1466, 1473 (W.D. Wash. 1985); Solomon v. Emanuelson, 586 F. Supp. 280, 283 (D. Conn. 1984).

Some courts have ruled to the contrary — but they are relatively few in number. See, e.g., Boyer v. Mealins, 315 P.2d 878, 880 (Ariz. 1957); Hurst v. Rice, 643 S.W.2d 563, 564 (Ark. 1982); Downen v. Country Mut. Ins. Co., 537 N.E.2d 445, 447 (Ill. App. Ct. 1989); Hofmann v. Auto Club Ins. Ass'n, 535 N.W.2d 529, 548 (Mich. Ct. App. 1955); State v. Joseph, 636 N.W.2d 325, 327 (Minn. 2001). Hartford's attempt to pad this list is unavailing: the other cases that it musters are off-point. Some stand for the uncontroversial proposition, wholly consistent with section 33, that claim preclusion applies to matters actually litigated and decided in the original declaratory judgment action. See, e.g., Fournier v. Ill Cas. Co., 391 N.W.2d 258, 260-61 (Iowa 1986). Others are cases that do not address whether the declaratory

judgment context makes a difference.  See, e.g., Smith v. Barfield, 276 S.E.2d 899, 900 (Ga. Ct. App. 1981).

We also have examined the leading treatises.  In general, they subscribe to the view that declaratory judgments should be accorded less preclusive effect than other final judgments.  The preeminent authority is the Second Restatement itself (which, of course, articulates the very rule on which Robinson's appeal hinges).  Other texts march to the same beat.  See David L. Shapiro, Civil Procedure: Preclusion in Civil Actions 63 (2001) ("[I]ssues not litigated in the declaratory action — perhaps because they were not foreseeable or because the plaintiff was seeking only a limited clarification of his rights and duties — should not be foreclosed in a later coercive action arising out of the same controversy."); see also Rosemary Gregor et al., American Jurisprudence 2d Declaratory Judgments § 248 (2d ed. 2003) (similar); James Wm. Moore, Moore's Federal Practice § 131.24[3] (3d ed. 2008) (noting that public policy goals are "furthered when a plaintiff who has sought solely declarative relief is allowed to seek additional coercive relief based on the same claim"); Charles A. Wright & Mary K. Kane, Law of Federal Courts 723-24 (6th ed. 2002) (similar).  But cf. 18A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4446 (2d ed. 2002) (noting that "traditional doctrine has refused to apply claim

preclusion to an action for declaratory relief alone," yet criticizing that practice).

Hartford's response consists mainly of citation to law review articles and notes, most of ancient vintage, that lament the difficulties inherent in the Restatement approach. See, e.g., Note, Declaratory Judgment and Matured Causes of Action, 53 Colum. L. Rev. 1130, 1132-33 (1953); Developments in the Law: Declaratory Judgments — 1941-1949, 62 Harv. L. Rev. 787, 843 (1949); Developments in the Law: Res Judicata, 65 Harv. L. Rev. 818, 881-82 (1952); Recent Decisions, 52 Mich. L. Rev. 139, 143 (1953).[7] The short answer to these musty lamentations is that the American Law Institute subsequently rejected them and reaffirmed the special rule of claim preclusion for declaratory judgments. See Restatement (Second) of Judgments § 33.

This brings us to policy rationales that may bear upon the question. The upshot of that consideration is a mixed bag. On the one hand, claim preclusion is a widely recognized means of husbanding judicial resources. See Heacock v. Heacock, 520 N.E.2d 151, 153 (Mass. 1988) (observing that claim preclusion is "based on

_____

[7] Two more recent law review notes advance policy arguments favoring Robinson's position. Ryan R. Dreyer, Note, Civil Procedure — Discouraging Declaratory Actions in Minnesota — The Res Judicata Effect of Declaratory Judgments in Light of State v. Joseph, 29 Wm. Mitchell L. Rev. 613, 626-27 & nn.112-116 (2002); Elizabeth L. Hisserich, Note, The Collison of Declaratory Judgments and Res Judicata, 48 U.C.L.A. L. Rev. 159, 173-75 & nn.53-61 (2000).

the idea that the party to be precluded has had the incentive and opportunity to litigate the matter fully in the first lawsuit"). On the other hand, judicial resources also are conserved by the availability of a declaratory judgment mechanism; the prompt and efficient use of that mechanism enables courts "to clarify the legal relationships of parties before they have been disturbed thereby tending towards avoidance of full-blown litigation." Harborside, 959 F.2d at 373. It would frustrate this latter policy were parties required to bring, as part of a declaratory judgment action, all conceivable claims and counterclaims on pain of preclusion. The Second Restatement has weighed these competing policy rationales and concluded — sensibly, in our view — that, on balance, public policy is furthered rather than retarded by the ready availability of a no-strings-attached declaratory remedy that is simpler, faster, and less nuclear than a suit for coercive relief. Restatement (Second) of Judgments § 33 cmt. c.

Relatedly, we note that the provision of Massachusetts law that authorizes declaratory judgments specifically anticipates the possibility of further proceedings. See Mass. Gen. Laws ch. 231A, § 5 (allowing "[f]urther relief based on a declaratory judgment" whenever necessary or proper). This provision sets in place a structure for declaratory judgments that is at odds with the rigid deployment of conventional principles of claim preclusion. Cf. Restatement (Second) of Judgments § 26(1)(d)

-21-

(delineating an exception to the normal rules of claim preclusion for cases in which a statutory scheme permits a splitting of the claim).

To this point, all roads lead to Rome. The district court, however, expressed concern that Robinson may have engaged in strategic litigation by intentionally splitting its claims between the original declaratory action and the later damages action. See Robinson II, 533 F. Supp. 2d at 221. But every lawyer — or, at least every competent lawyer — factors strategic considerations into decisions affecting his or her handling of litigation. Moreover, the type of claim-splitting that worried the district court is precisely what the Restatement rule contemplates. The antidote, if one is needed, should be administered in the first action, in which the judge can refuse to entertain the declaratory judgment petition absent joinder of coercive claims.[8] See Restatement (Second) of Judgments § 33 cmt. c; cf. El Día, Inc. v. Hernández Colón, 963 F.2d 488, 493 (1st Cir. 1992) (holding that declaratory relief is a matter of discretion). Here, the trial justice in the first action saw no need to impose such a qualification.

---

[8] As Hartford points out, this may be advantageous because, once joined, those coercive claims can then be stayed. But to say that such a praxis has advantages is not to say that it is mandatory.

**IV. CONCLUSION**

We need go no further. After canvassing the Massachusetts cases, examining the precedents elsewhere, consulting scholarly literature, and weighing relevant policy rationales, we believe that we can predict with some assurance that the SJC, if faced with the question presented in this appeal, would likely follow the rule set out in section 33 of the Restatement (Second) of Judgments. In other words, we do not think that the SJC would construe a final judgment in a declaratory action that did not raise coercive claims as barring a subsequent damages action asserting such claims, even though the latter arose out of the same transaction. Thus, we reverse the order of dismissal and remand for further proceedings consistent with this opinion.

**Reversed**.